D & J QUARRY PRODUCTS, INC. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF BEACON FALLS ET AL.

O & G INDUSTRIES, INC. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF BEACON FALLS

HAMDEN SAND AND GRAVEL COMPANY *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF BEACON FALLS ET AL.
(14059)

PETERS, C. J., CALLAHAN, COVELLO, HULL and BORDEN, Js.

448

Argued December 6, 1990—decision released February 12, 1991

*Robert F. Carter,* with whom, on the brief, was *Donna Civitello,* for the appellants (defendants).

*Richard J. Buturla,* for the appellee (plaintiff D & J Quarry Products, Inc.).

*Thomas P. Byrne,* for the appellee (plaintiff O & G Industries, Inc.).

PETERS, C. J. The issue in these consolidated appeals is the extent of local authority to amend zoning regulations so as to prohibit the accessory processing of earth products excavated beyond town limits. Following the adoption of such amendments by the planning and zoning commission of the town of Beacon Falls (commission), the plaintiffs, D & J Quarry Products,

Inc., O & G Industries, Inc., and Hamden Sand and Gravel Company, appealed to the Superior Court. Each plaintiff raised similar, albeit not identical, claims that adoption of the amendments illegally restricted their right to continue valid nonconforming uses of their respective properties.[1] The court, *Fuller, J.,* sustained their appeals, holding that the amendments: (1) violated the protection that General Statutes § 8-2[2] affords to nonconforming uses; and (2) illegally discriminated against processing operations based on the source of materials processed. Upon the Appellate Court's granting of its petition for certification, the commission appealed from the trial court's judgment.[3] We transferred the appeal to ourselves pursuant to Practice Book § 4023 and now reverse.

As the trial court found in its memorandum of decision, the plaintiffs are operators of mining, excavation and gravel processing facilities located in industrial and industrial park zones within the town of Beacon Falls. In their processing operations, they have increasingly utilized sand, gravel and stone (hereinafter earth products) that have been excavated outside of the town. Between late 1987 and 1988, D & J Quarry Products processed only earth products imported from other

[1] The plaintiffs also raised other statutory and constitutional claims in their initial appeal to the Superior Court. The plaintiffs failed to brief, or argue, a number of these claims at trial, and the court therefore deemed them abandoned. Because the appeal challenged the facial validity, and not an application, of the zoning amendments, the court declined to consider D & J Quarry Products' claims that the amendments constituted an unconstitutional taking of property without just compensation. The court also rejected D & J Quarry Products' claim that the amendments were void for vagueness.

[2] General Statutes § 8-2 provides in pertinent part: "[Zoning] regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations."

[3] By motion to the Appellate Court, Hamden Sand and Gravel Company represented that it no longer had an interest in, and would not defend against, the appeal.

towns. Similarly, the trial court found that in recent years, O & G Industries has increasingly relied upon imported earth products. The trial court noted that "[t]here is a dispute between the three plaintiffs and the Commission over the status of the uses of the plaintiffs' properties and whether they are illegal uses, nonconforming uses or permitted uses under the Zoning Regulations." In the present proceedings, the plaintiffs did not present a factual record, either before the commission or before the trial court, that would have enabled this dispute to be resolved.

The sole issue before the trial court was the facial validity of amendments to the town's zoning regulations enacted by the commission, following a public hearing on September 7, 1988, in order to address local concerns about perceived changes in the nature of earth products processing operations in Beacon Falls. As the trial court acknowledged, the commission, acting in a legislative capacity, had broad authority to adopt the amendments. See *Primerica* v. *Planning & Zoning Commission,* 211 Conn. 85, 96, 558 A.2d 646 (1989); *Burnham* v. *Planning & Zoning Commission,* 189 Conn. 261, 265, 455 A.2d 339 (1983). The trial court properly refused to substitute its judgment for that of the commission and limited its review to a determination of whether the record reasonably supported the commission's decision to adopt the amendments. See *Primerica* v. *Planning & Zoning Commission,* supra; *Burnham* v. *Planning & Zoning Commission,* supra; *Calandro* v. *Zoning Commission,* 176 Conn. 439, 440, 408 A.2d 229 (1979).

The record before the trial court manifested itself in the form of a preamble to the amendments. The preamble articulated the commission's findings that: (1) dust, smoke, noise and vibrations from the processing operations were having an adverse impact upon the health

of the community; (2) heavy truck traffic associated with the operations had created hazardous road conditions for children, pedestrians and motorists, and had accelerated deterioration of local roadways; and (3) the town was "in danger of permanently becoming an earth products processing center for the region because other municipalities prohibit earth products processing in many instances . . . ." The commission perceived a risk, already realized in part, that the focus of local mining enterprises would shift, as the mines were gradually depleted, from mining operations to full-fledged free-standing processing operations utilizing earth products imported from sources outside of the town. The trial court concluded, despite the plaintiffs' pleas to the contrary, that the record supported the commission's decision to amend the zoning regulations. That conclusion has not been challenged in this appeal.

The zoning regulations, as amended, prohibit all earth products processing in all districts. The amendments also make *accessory* processing operations established prior to the effective date of the amendments nonconforming uses, subject to the requirements of § 64.11 of the regulations. The amendments do not expressly address the status of formerly *principal* processing operations, a deficiency that the plaintiffs contend is fatal to their validity.

The authority for local enactment of zoning regulations is found in General Statutes § 8-2. Relying on the provision of § 8-2 that "[zoning] regulations shall not prohibit the continuance of any nonconforming use . . . existing at the time of the adoption of such regulations," the plaintiffs argued that the amended regulations precluding the further processing of imported materials exceeded the commission's statutory authority. The trial court agreed and held that the aforementioned amendments were invalid to the extent that they

applied to "existing nonconforming uses engaged in processing of materials as of the effective date of the zoning amendments." The court further held that the amendments violated § 8-2 because they were based on the source of materials rather than on the "use of land."

The commission's appeal challenges both of the trial court's grounds for invalidating the zoning amendments. On the issue of the preservation of nonconforming uses, the commission maintains that the amendments are valid under § 8-2 because, without infringing upon any preexisting principal or accessory processing use that the plaintiffs may be able to establish, they purport only to ensure that accessory uses do not become principal uses through the importation of earth products after local mines have been depleted. With respect to the validity of distinctions based upon the geographical source of the processed earth materials, the commission maintains that its actions were authorized by the general police power conferred upon municipalities by General Statutes § 7-148 (c) (8) (C).[4]

I

Before proceeding to the merits of the commission's appeal, we first consider the scope of our review. Each of the briefs contains considerable argument about the status of the various plaintiffs' processing operations under the town's zoning regulations prior to their amendment in 1988. Furthermore, the commission argues here, as it did at trial, that, even prior to the amendments, earth products processing had enjoyed

[4] The plaintiffs challenge the propriety of the commission's invocation of General Statutes § 7-148 (c) (8) (C) on the ground that that section was not appropriately raised either at trial or in the commission's preliminary statement of issues on appeal. See Practice Book § 4185. We need not resolve this procedural objection in light of our determination that the commission's appeal can be sustained under General Statutes § 8-2.

only accessory use status. The plaintiffs maintain, to the contrary, that processing had always been a permitted principal use of land under the regulations. Consequently, they argue that, under General Statutes § 8-2, their processing operations must be allowed to continue as valid nonconforming uses.

Because this challenge to the facial validity of the amended zoning regulations does not involve their specific application to the processing operations of the plaintiffs, these questions are beyond the scope of our review in this case. The trial court correctly did not decide whether processing had been a principal or accessory use under the town's zoning regulations prior to their amendment, or whether the plaintiffs' processing operations constitute valid nonconforming uses. None of the parties has contested, on this appeal, the trial court's determination that it lacked the requisite factual record to resolve these matters. A fortiori, such issues must await another day.

II

Our function on appeal is to determine whether the trial court correctly concluded that the town's amended zoning regulations are facially invalid because they illegally infringe upon nonconforming uses, or discriminate based on the source of materials, in contravention of § 8-2. See *Whittaker* v. *Zoning Board of Appeals,* 179 Conn. 650, 654, 427 A.2d 1346 (1980) (judicial review limited to determination of whether zoning authority's action was arbitrary, illegal or an abuse of discretion); *Bogue* v. *Zoning Board of Appeals,* 165 Conn. 749, 752, 345 A.2d 9 (1974). On the present record, we cannot agree with the trial court's conclusion.

In evaluating this challenge to the 1988 amendments, we must first determine what is really at issue. The plaintiffs contend that, since they have alleged that

their processing operations constituted either permitted or valid nonconforming principal uses, the amendments, especially §§ 64.11.5 (f), 41.1.3 and 42.1.1, are invalid. These sections prohibit the processing of materials excavated outside of the town. Section 64.11.5 (f) in particular imposes further limitations on obtaining the necessary permit required to continue a nonconforming accessory processing use. Specifically, § 64.11.5 (f) states: "After September 1, 1990, no earth products excavated outside the Town of Beacon Falls shall be screened, sifted, washed, crushed or otherwise processed at any earth products processing facility or site in the Town of Beacon Falls; provided, that stockpiles of earth products excavated outside of the Town of Beacon Falls which are in existence as of September 1, 1990, must be entirely processed as of September 1, 1991." Furthermore, §§ 41.1.3 and 42.1.1, applicable to industrial and industrial park districts respectively, provide that "after September 1, 1990, no rock, sand, gravel or other earth products which are excavated outside of the Town of Beacon Falls shall be screened, washed, crushed or otherwise processed . . . provided, that stockpiles of earth products excavated outside of the Town of Beacon Falls which are in existence as of September 1, 1990, must be entirely processed as of September 1, 1991, subject to the requirements of Section 64."

Consistently with its contention that under the zoning regulations earth products processing has always been permitted only as an accessory use,[5] the commission concedes in its brief that "[t]o . . . the extent that any of the plaintiffs may be able to prove a pre-existing and valid non-conforming *principal* use of land for earth products processing beyond the reach of the zoning regulations, then the plaintiff may continue to

---

[5] See text at Part I of this opinion, supra.

operate a processing facility." (Emphasis added.) The commission acknowledges, therefore, that the amended regulations were not intended to interfere with pre-existing principal earth products processing operations.

The plaintiffs do not dispute the premise upon which the amendments were adopted. Nonetheless, they argue that the amendments are facially suspect because they fail *expressly* to excuse principal nonconforming uses from the prohibition on processing of imported materials. We are unpersuaded.

In construing the amended regulations in accordance with the commission's stated intent, we give effect to the purpose for which the amendments were enacted. We must presume that the commission intended to undertake a valid exercise of the authority conferred upon it by § 8-2. Faced with one interpretation of a legislative act that renders its enactments valid, and an alternative that renders them invalid, we adopt the former. *Planning & Zoning Commission* v. *Gilbert,* 208 Conn. 696, 706, 546 A.2d 823 (1988); *Maciejewski* v. *West Hartford,* 194 Conn. 139, 151–52, 480 A.2d 519 (1984); *Verrastro* v. *Sivertsen,* 188 Conn. 213, 220–21, 448 A.2d 1344 (1982); *Muller* v. *Plan & Zoning Commission,* 145 Conn. 325, 331, 142 A.2d 524 (1958).

We conclude, therefore, that §§ 64.11.5 (f), 41.1.3 and 42.1.1, although lacking an express exemption for nonconforming principal processing uses, implicitly exempt such uses. Thus, to the extent that the plaintiffs, or any other processing facility operator, can prove that their processing uses are nonconforming principal uses, they are free to use imported materials in their operations. The amendments, however, are not invalid on their face.

The regulations similarly are not facially invalid even though, in specifically affording nonconforming use status to preexisting accessory processing uses, they limit

such uses to the processing of locally mined earth products. By definition, accessory uses must be located on the same lot, and must be subordinate and customarily incidental to, the principal use. *Lawrence* v. *Zoning Board of Appeals,* 158 Conn. 509, 512, 264 A.2d 552 (1969). It follows that an accessory processing facility would lose its accessory use status if it attempted, through the importation of materials from another town, to continue operating after its principal excavation or mining use had ended. Such substituted operations would no longer be subordinate or incidental to the principal use. Thus, the amendments prohibiting the importation of earth products do not infringe upon nonconforming accessory processing uses; rather, their purpose is to prevent such uses from metamorphosing into principal uses through the utilization of imported earth products to replace depleted local mining products.

On the present record, it would be speculative and premature to conclude that the 1988 zoning amendments violate the strictures § 8-2 against impairment of nonconforming uses. Because the amendments are facially valid, the trial court's holding to the contrary cannot stand.

### III

The commission maintains that the trial court was equally incorrect in concluding that the 1988 zoning amendments violated § 8-2 by illegally discriminating between processing operations on the basis of the source of the earth materials used by the processing facilities. We agree with the commission for the same reasons that we concluded in Part II that the amendments do not infringe upon nonconforming accessory uses. As we previously stated, the purpose of the challenged amendments is to prevent accessory process-

ing uses from metamorphosing into principal uses. This entirely legitimate purpose appropriately regulates the use of land and is therefore consistent with the authority conferred by § 8-2.

The judgment is reversed and the cases are remanded with direction to render judgment dismissing the plaintiffs' appeals.

In this opinion the other justices concurred.

