[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I.
Introduction.
On February 11, 1991, the Cornwall Planning and Zoning Commission, after public hearing, amended that portion of the zoning regulations governing the issuance of a special exception permit and site plan approval for establishment of a commercial sawmill in the R-3 and R-5 residential zones.
Notice of this decision was published in accordance with the applicable statutory requirements, and thereafter plaintiffs filed a timely appeal to the superior court. The trial court's finding that the plaintiffs were not aggrieved was reversed by the Appellate Court in Cole v. Planning Zoning Commission,30 Conn. App. 511 (1993). Therefore, the issue of aggrievement has been determined in favor of the plaintiffs and the court must consider the case on its merits. The parties have also stipulated has aggrievement has been established. CT Page 3686
 II. Facts
On October 27, 1989, Lawrence Stevens and his mother, Victoria Stevens, applied to the Cornwall Zoning Commission for a permit to construct a "storage shed" on property owned by Victoria Stevens on Cream Hill Road in Cornwall (ROR #22, pg. 1). In considering the application, the zoning commission learned that the shed was to house a sawmill (ROR #22, pg. 1), and that an illegal sawmill was being operated on the premises already (ROR #25, pg. 2). The zoning regulations then in effect in Cornwall, permitted the operation of a permanent sawmill in residential districts by special exception, but only if a 500 foot setback requirement could be met. (ROR #18, pg. III-3).
Because Mr. Stevens was operating the sawmill on his mother's property without a special permit and because the 500 feet setback requirement could not be met, Mr. Stevens was forced to discontinue the sawmilling operation. (ROR #25, pg. 2).
The zoning commission held public hearings on the amendments it was proposing to zoning regulations concerning limited use sawmills, on October 11, 1990 and January 19, 1991. The new regulations were adopted on February 11, 1991. In pertinent part, the new regulation reduced the setback requirement to 200 feet from 500 feet and classified sawmills as a Class C #83 (Forestry Activities) land use for the purpose of noise levels. (Record 21).
 III. Plaintiffs' Argument.
In their complaint, the plaintiffs appealed from the decision of the zoning commission amending its zoning regulations to permit operation of a permanent commercial sawmill in R-3 and R-5 residential districts with minimum setback of 200 feet instead of 500 feet. As the basis for this appeal, the plaintiffs alleged that the defendant "acted illegally, arbitrarily, and in abuse of the discretion vested in it in that said zoning regulation CT Page 3687 change was not made in harmony with the comprehensive Town Plan and said regulation change was made despite the absence of any new condition or change in the character of the Town and said change was made for the benefit of one or two individuals who desired to operate a sawmill on property which did not meet the 500 feet setback requirement of the original regulation."
In its trial brief dated October 15, 1991, the plaintiffs asserted two arguments:
A. THE ZONING CHANGES WERE NOT IN ACCORDANCE WITH THE COMPREHENSIVE PLAN NOR REASONABLY RELATED TO THE POLICE POWER PURPOSES OF CONNECTICUT GENERAL STATUTES SEC. 8-2.
The plaintiffs argue that the zoning commission, as proponent of the zoning changes, did not advance any evidence at either of the public hearings that the health, safety and welfare of the citizens were either promoted or protected by the elimination of the 500 feet setback requirement, or that the changes would lessen congestion in the streets or promote the general welfare. They also claim that such promotion of commercial and industrial uses in residential zones is not in accordance with the comprehensive plan.
B. THE ZONING COMMISSION ABUSED ITS DISCRETION IN CHANGING THE ZONING REGULATIONS GOVERNING THE USE OF SAWMILLS IN RESIDENTIAL DISTRICTS IN THAT SAID CHANGES WERE ENACTED FOR THE BENEFIT OF A SINGLE INDIVIDUAL AND NOT ALL TOWN RESIDENTS.
The plaintiffs claim that a thorough review of the record shows that the primary motivation of the revision of the sawmill regulations was to enable Larry Stevens, Jr. to operate a sawmill which didn't meet the 500 feet setback requirement, and that the record is devoid of any evidence that the change in the setback requirements was for the benefit of the community.
In their post trial brief dated December 9, 1991, the plaintiffs argue that "the reasons given by the commission for the zoning change are not supported by the record"; that the "amendments removed what little CT Page 3688 protection there was from both the visual pollution and the noise pollution that the presence of a commercial sawmill inevitably entails."
 IV. Defendant's Argument.
In its brief of November 13, 1991, the defendant argues as follows:
A. Was the regulation change in harmony with the comprehensive town plan? The comprehensive plan in accordance with which zoning regulations are to be adopted is such a plan as the zoning commission devises. The commission found at their regular meeting of February 11, 1991, at which the contested amendment was adopted, that "the Town Plan contains recommendations which support this amendment: `To expand the opportunity for local employment by permitting small-scale . . . business activities in residential zones under standards which assure that such activities will be compatible with the surrounding residential uses.'"
B. Was the regulation changed despite the absence of any new condition or change in the character of the town?
The defendant argues that even though the court has stated on several occasions that before a zoning commission rezones property, there should be proof either that there was some mistake in the original zoning or that the character of the neighborhood had changed to such an extent that a reclassification should be made, this requirement is not as severe as it seems. This principle is applicable only if one or a very few properties are to be affected by the proposed amendment. The amendment must be reasonably related to the health, safety, welfare or prosperity of the community, and not permit a use which is hostile to the general plan of zoning. The determination of when the public interest requires an amendment is within the discretion of the legislative agency. The defendant further argues that the minutes of the February 11, 1991 regular meeting of the commission show that "last January and February of 1990 the commission became aware of the inadequacy of the regulation regarding permanent sawmills — there was only CT Page 3689 one requirement, that the setback be 500 feet. The inadequacy was seen in two areas: (1) technological advances that produced smaller, quieter milling equipment not recognized by the arbitrary setback; (2) protections from dissimilar uses such as buffers, etc. were absent."
C. Was said change made for the benefit of one or two individuals?
The defendant asserts that the record does not support this claim of the plaintiffs, and that the change filled a recognized need and was consistent with town plan recommendations, "to expand the opportunity for local employment by permitting small-scale . . . business activities in residential zones under standards which assure that such activities will be compatible with surrounding residential uses."
Both sides filed supplemental briefs, the plaintiff on December 6, 1993, and the defendant on December 13, 1993. The plaintiff claimed that the portion of the amendment concerning permissible noise levels illegally contravenes the Torrington Area Health District noise regulations; that the portion of the amendment that provides that a special permit to operate a sawmill in a residential district expires after two years is a patently illegal provision; and that the zoning commission acted illegally in changing the 500 feet setback requirement to 200 feet, based on evidence obtained outside the confines of the public hearing.
In its supplemental brief, the defendant claims that the duration of a special permit can be limited; that the zoning commission incorporated the applicable noise standards into its regulations; and that the plaintiffs had the opportunity to challenge at a public hearing any evidence the commission used in deciding no change the 500 feet setback requirement to 200 feet.
 V. Discussion.
A. Scope of Judicial Review.
It is clear that the scope of judicial review of a CT Page 3690 decision of a local zoning commission when it acts in a legislative capacity by amending zoning regulations is limited.
"`[T]he commission, acting in a legislative capacity, [has] broad authority to adopt the amendments.'" D J Quarry Products, Inc. v. Planning Zoning Commission, 217 Conn. 447, 450, 585 A.2d 1227
(1991). "In such circumstances, it is not the function of the court to retry the case. Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached. Calandro v. Zoning Commission, 176 Conn. 439, 440, 408 A.2d 229
(1979)." Primerica v. Planning Zoning Commission,211 Conn. 85, 96, 558 A.2d 646 (1989). "Acting in such legislative capacity, the local board is free to amend its regulations whenever time, experience, and responsible planning for contemporary or future conditions reasonably indicate the need for a change . . . The discretion of a legislative body, because of its constituted role as formulator of public policy, is much broader than that of an administrative board, which serves a quasi-judicial function. Malafronte v. Planning Zoning Board, [155 Conn. 205,209, 230 A.2d 606 (1967)].' (Internal quotation marks omitted.) Arnold Bernhard Co. v. Planning Zoning Commission, 194 Conn. 152, 164, 479 A.2d 801 (1984). This legislative discretion is "wide and liberal," and must not be disturbed by the courts "unless the party aggrieved by that decision establishes that the commission acted arbitrarily or illegally." Burnham v. Planning Zoning Commission, 189 Conn. 261, 266,455 A.2d 339 (1983). "Zoning must be sufficiently flexible to meet the demands of increased population and evolutionary changes in such fields as architecture, transportation, and redevelopment. Luery v. Zoning Board, 150 Conn. 136, 145, 187 A.2d 247 [1962]; Clark v. Town Council, 145 Conn. 476, 483, 144 A.2d 327 [1958]. The responsibility for meeting these demands rests, under our law, with the reasoned discretion of each CT Page 3691 municipality acting through its duly authorized zoning commission. Courts will not interfere with these local legislative decisions unless the action taken is clearly contrary to law or in abuse of discretion." Malafronte v. Planning Zoning Board, supra, 209-10. Within these broad parameters, "[t]he test of the action of the commission is twofold: (1) The zone change must be in accord with a comprehensive plan, General Statutes 8-2, Summ v. Zoning Commission, 150 Conn. 79, 87,186 A.2d 1609 [1962], and (2) it must be reasonably related to the normal police power purposes enumerated in 8-2 . . ." First Hartford Realty Corporation v. Plan Zoning Commission, 165 Conn. 533, 541, 338 A.2d 490 (1973)." Protect Hamden/North Haven from Excessive Traffic Pollution, Inc. v. Planning Zoning Commission,220 Conn. 527, 542, 543, 544 (1991).
The usual standard in land use cases is whether the evidence in the record reasonably supports the agency's decision, and the reasons given for it, and if so, the court cannot substitute its judgment as to the weight of the evidence for that of the agency. Housatonic Terminal Corp. v. Planning and Zoning Board, 168 Conn. 304, 305-306
(1975); Westport v. Norwalk, 167 Conn. 151, 158, 161
(1974).
Was this zone change in accord with a comprehensive plan?
The minutes of the regular meeting of the commission on February 11, 1991 (Record 10), which was the meeting at which the contested amendment was adopted, disclose that the Planning and Zoning Commission stated as follows:
 Whereas, the town plan contains recommendations which support this amendment: `To expand the opportunity for local employment by permitting small-scale business activities in residential zones under standards which assure that such activities will be compatible with surrounding residential uses.'
The record shows that the commission made a CT Page 3692 considered decision that the change would fit those town plan recommendations. The amendment added a new definition of "Permanent Sawmill," and added a new subsection, 8.20 entitled "Permanent Sawmill for Limited Commercial Use," which contained:
"1. A Statement of Purpose.
2. A Statement of Use, which required the special permit application to include a comprehensive statement of use describing the operations:
 a. specifications for the saw and all equipment related to the proposed use (including but not limited to, trucks).
 b. identification of outside storage area.
 c. other information as required by these regulations or by the commission.
The approved Statement of Use shall become apart of the special permit.
3. Minimum Lot Size. The minimum lot size shall be 5 acres.
4. Employees. Employees permitted on the site at one time shall be limited to members of the family of the operator and no more than two outside employees."
This new subsection 8.20 goes on to include provisions for Minimum Standards — Location and Operation, which include noise standards established by the Torrington Area Health District Noise Control Regulations, and establishes a setback line of 200 feet, and limits operation to one commercial saw between 7:00 a.m. and 8:30 p.m. It also provides general standards for the location of a sawmill building, and has separate provisions for outside storage, vehicular access and use, and for permit and enforcement.
The comprehensive plan that must be conformed to when zoning regulations are adopted is such plan as the CT Page 3693 zoning commission devises. Levinsky v. Zoning Commission, 144 Conn. 117, 123 (1956).
At the regular meeting of the Planning and Zoning Commission on February 11, 1991, (Record 10), the Commission clearly and specifically found that "the Town Plan contains recommendations which support this amendment: `To expand the opportunity for local employment by permitting small-scale . . . business activities in residential zones under standards which assure that such activities will be compatible with surrounding residential uses . . . . The proposed amendment was written over a year's time with the help of planning, health, and legal consultants to fill a recognized need and the town plan recommendations.'"
This was a formal, official, collective statement of the reasons for the Commission's decision. There is a reasonable basis in the record for this decision and the rasons [reasons] given are pertinent to the considerations which the Commission must apply under the zoning regulations. The safeguards contained in the amended regulations are reasonably related to the normal police power purposes contained in Section 8-2 of the Conn. Gen. Stat.
"Courts must not disturb the decision of a zoning commission unless the party aggrieved by that decision establishes that the commission acted arbitrarily or illegally." Burnham v. Planning and Zoning Commission,189 Conn. 261, 266 (1983). The zoning authority is best able to assess public need and how to satisfy that need.
The plaintiffs have alleged that the change in regulations was enacted for the benefit of one person, and not for all town residents; and that the record shows that the primary motivation was to enable Larry Stevens, Jr. to operate a sawmill which did not meet the 500 feet setback requirement.
The record shows that before the Commission's vote on February 11, 1991, it was stated that they had "become aware of the inadequacy of the regulation regarding permanent sawmills. There was only one requirement, the setback of 500 feet. The inadequacy was seen in two areas. One, technological advances have produced smaller CT Page 3694 quieter milling equipment not recognized by the arbitrary setback, and two, protection from dissimilar uses such as buffers, etc. were absent from that regulation.
Whereas the Town Plan contains recommendations to support this amendment, both to expand the opportunity for local employment by permitting small-scale business activities in residential zones under standards which assure that such activities will be compatible with surrounding residential uses." (Record 16, pg. 1).
While it may well be true that Larry Stevens, Jr. would be an immediate beneficiary of the change, the record negates a conclusion that the Commission did not consider the community as a whole in making the change, or that it did not consider the effect the change would have on the comprehensive plan for use of property in Cornwall.
The plaintiffs argue that no new conditions had arisen which would justify the change. However, the minutes of the February 11, 1991 regular meeting of the Commission, show that Chairman Virginia Potter stated: "Whereas last January and February of 1990 the Commission became aware of the inadequacy of the regulation regarding permanent sawmills — there was only one requirement, that the setback be 500 feet. The inadequacy was seen in two areas:
(1) Technological advances have produced smaller, quieter milling equipment not recognized by the arbitrary setback;
(2) protections from dissimilar uses such as buffers, etc., were absent." These constitute new considerations sufficient to support the Commission decision. Furthermore, as our Supreme Court has held:
 Ordinarily, unless new conditions arise which substantially alter the character of an area, a change in zone classification is unwarranted . . . A local zoning authority, however, acts in a legislative capacity when it enacts or amends is regulations . . . . In acting, such a legislative body must be CT Page 3695 relatively free to amend or modify its regulations whenever time and experience have demonstrated the need for a revision . . . .
 The board, acting in a legislative capacity, was, therefore, not bound by the general rule which would prohibit it from reversing an earlier decision without evidence of a change in conditions. . ., this rule, which is a restriction on the principal of legislative discretion, will only be applied in those rare instances where the zoning amendment is patently arbitrary. A less strict rule would require the court to exercise a legislative judgment.
Morningside Assn. v. Planning Zone Board, 162 Conn. 154,157-159 (1972).
 Acting in such legislative capacity, the local board is free to amend its regulations whenever time, experience and responsible planning for contemporary or future conditions reasonably indicate the need for a change.
Central Bank for Savings v. Planning Zoning Commission13 Conn. App. 448, 453 (1988).
The Commission referred to "technological advances" which would qualify as the contemporary conditions referred to in the Central Bank case.
The plaintiffs further argue that the Commission acted illegally when it changed the setback requirement from 500 feet to 200 feet based on evidence obtained outside the public hearing, referring to remarks made by the Chairwoman at public hearings on October 11, 1990 and February 11, 1991.
Members of the Commission "are entitled to take into consideration whatever knowledge they acquire by personal observation." Burnham v. Planning Zoning Commission,189 Conn. 261, 267 (1983), citing Dubiel v. Zoning Board of Appeals, 147 Conn. 517, 522 (1960). CT Page 3696
The plaintiffs had the opportunity to challenge the chairwoman's statements at the meeting of October 11, 1990 and February 11, 1991 but did not do so. There is no claim or evidence that the Commission improperly received any additional evidence after the public hearing closed.
The plaintiffs also argue that the portion of the amendment concerning permissible noise levels contravenes the Torrington Area Health District noise regulations.
An examination of the testimony of Thomas A. J. McGowan, Planning Consultant for Cornwall, (Record 14, pg. 4), and of Gilbert Roberts of the Torrington Area Health District (Record 14, pg 5), shows that the new regulation does not violate the Torrington Area Health District noise standards.
Finally, the plaintiffs argue that the portion of the amendment that provides that a special permit to operate a sawmill in a residential district expires after two years and may be renewed for additional two-year periods, is a patently illegal provision.
The court sees no reason why the duration of a special permit cannot be limited:
 . . .the underlying theory for a special permit procedure is to give the commission the opportunity to evaluate the interaction of a generally acceptable activity in a particular context. The reasons for limiting the duration of a special permit are to provide an effective means of enforcing a condition, and to give the commission an opportunity to review the activity after a period of time to determine whether circumstances have changed sufficiently to warrant a changed decision. Therefore, a renewal application could properly consider afresh whether the use belongs at the site, but only to the extent that new developments have occurred — in effect, a change or mistake rule should be applied in order to protect the permittee from abuses of discretion, yet give a commission the opportunity to balance the owner's CT Page 3697 interest (including the investment already' made based on the initial permit) with the commission's responsibility for ensuring a balanced land use plan for the community.
Connecticut Land Use Regulation, Second Edition, Terry J. Tondro, page 461.
Furthermore, permitting a limited duration for a special permit seems consistent with Section 8-2 of the Conn. Gen. Stat. which provides in pertinent part as follows:
 . . . All such regulations shall be uniform for each class or, kind of buildings, structures or use of land throughout each district, but the regulations in one district may differ from those in another district, and may provide that certain classes or kinds of buildings, structures or uses of land are permitted only after obtaining a special permit or special exception from a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, whichever commission or board the regulations may, notwithstanding any special act to the contrary, designate, subject to
The appeal is dismissed.
RICHARD A. WALSH, J.