[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I STATEMENT OF APPEAL
This is a consolidated administrative appeal from the planning and zoning commission of the town of Newtown's (commission) adoption of amendments to the Newtown zoning regulations. The challenged amendments increase the number of prohibited uses in the town's aquifer protection district (APD) and expand the area of the APD.
 II BACKGROUND AND PROCEDURAL HISTORY
The Newtown zoning regulations have had an APD since 1981. The APD, designated as an overlay zone, was created for the purpose of protecting ground water quality and the supply of safe drinking water. Under the 1981 regulations, the following four uses were prohibited: landfills, printing establishments, public garages or filling stations, and car wash CT Page 5920 facilities. The amendments at issue add fourteen use prohibitions of which the Plaintiffs take specific issue with five: maintenance and outdoor storage of commercial vehicles or construction equipment, removal of sand and gravel, medical offices, retail uses, and a two acre minimum for a single-family residence.
Prior to the adoption of these amendments, all of the Plaintiffs, with the exception of Robert H. Hall (Hall), owned property within the APD. The Plaintiffs in Maguire v. Planning Zoning Commission, Docket No. CV99-0336408 (Maguire appeal) own property in non-residential zones within the APD and appeal from use prohibitions formerly permitted in the APD. The increase from one to two acres for single-family residences relates to Hall v. Planning Zoning Commission, Docket No. CV99-0336369 (Hall appeal) as it concerns property in a residential zone.
The Hall property consists of seventeen acres, approximately ten of which lie in the one acre [farming and residential] zone (R-1). Prior to the amendments, this property was entirely outside the APD, however, presently, it is entirely within the Level B mapping area which was added to the APD by the June 17, 1999 amendment. Level B mapping is an initial mapping of the aquifer protection area done in accordance with standards determined by the commissioner of environmental protection pursuant to provisions of the aquifer protection program mandated by General Statutes §§ 22a-354a through 22a-354bb. The commission enlarged the boundaries of the APD in a manner consistent with the recommendations of the department of environmental protection (DEP).
The Maguire properties consist of two adjacent lots in the business zone (B-3) and a one acre adjacent lot in the professional zone (P-1). The lots are in the original APD, but outside the Level B mapping areas. The Maguires' business, a fire damage restoration company, is located on one of the B-3 lots, and the new regulations would restrict the maintenance and parking availability for its vehicles. On the second B-3 lot, the commission previously approved a site development plan for an office building. The underlying B-3 zone permits the Maguires to lease to professional persons, including doctors. The new regulations, however, prohibit use for medical offices.
The Edwards' property consists of a two acre lot in the underlying industrial M-2 zone, and is within the original APD. The commission previously approved a special exception for an office building, which lapsed due to passage of time. The new regulations would prohibit use of this property for medical offices.
The Curtis Corporation property is within the original APD and the Level B mapping area. It lies primarily in the industrial zone (M-4) CT Page 5921 established in 1958 and expanded in 1997 when the commission approved an application to change an additional eight acres from residential R-1 to industrial M-4. Approximately eighteen acres remain zoned as farming and residential. In the past, sand and gravel deposits on this parcel have been mined, most recently under permits granted to the adjacent sand and gravel operator in 1996 and continued in 1997. In 1999, prior to adoption of the regulations at issue, Curtis applied for a change of zone to industrial M-4 for another eight acres for an industrial subdivision and requested permission to excavate and remove approximately 115,000 cubic yards of sand and gravel. The application was denied in September, 1999, because of an objection to the removal of the sand and gravel. The current absolute prohibition against removal was not applicable to the previous application. Such removal is now specifically prohibited by the regulations appealed from. Without approval of this change of zone to industrial M-4, the eight acres are impacted by the newly adopted requirement of a minimum of two acres for a residential lot on the previously one acre residentially zoned property, and by the new parking prohibition.
The DD Newtown Partners, Ltd. Partnership property includes the Sand Hill Plaza Shopping Center. This property is approximately thirty-eight acres, of which less than twenty acres are required for the existing shopping center. It is located both in the original district and within the Level B mapping area. The underlying zone is industrial (M-6), the "Sand and Gravel Zone." The new regulations prohibit the mining or
removal of sand and gravel, thereby preventing removal of the excess sand and gravel that would result from an expansion of the shopping center. Expansion is possible under the Newtown zoning regulations. In July, 1995, the commission approved an amendment with a special exception to allow a 21,450 square foot retail expansion. As part of that application, which has since lapsed, the commission approved the removal of 78,000 cubic yards of sand and gravel from the site. The new regulations also prohibit some uses of existing tenants of the plaza, i.e., a beauty salon, nail salon, photo store, and optometrist. The field of potential tenants is greatly restricted by the newly adopted regulations.
The Defendant commission gathered information and considered amendments to the APD regulations and the APD boundary map for several years before bringing them to public hearings. On February 4, 1999, February 25, 1999, March 25, 1999, and June 9, 1999, the commission held hearings concerning changes to the regulations and boundaries of the APD. At the June 9, 1999 hearing, the commission adopted the amendments to the regulations. On June 19, 1999, the commission adopted the APD boundary map, amended to include Level B mapping of the boundaries of the aquifer protection areas. Thereafter, the two appeals were taken from the CT Page 5922 decisions of the commission challenging some of the use prohibitions in the APD and the new boundary.[1] The appeals were subsequently consolidated.
 III AGGRIEVEMENT
General Statutes § 8-8 explicitly governs appeals from decisions of planning and zoning commissions. Ensign-Bickford Realty Corp. v. ZoningCommission, 245 Conn. 257, 263-64 (1998).[2] Pleading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a Plaintiff's appeal. Jolly, Inc. v. Zoning Board ofAppeals, 237 Conn. 184, 191 (1996). On January 13, 2000, the Defendant filed a motion to dismiss, claiming lack of aggrievement in both appeals. On November 21, 2000, the court, Radcliffe J., denied the Defendant's motion and determined the Plaintiffs are aggrieved.
 IV SCOPE OF REVIEW
The standard for review of a zoning commission's amending or refusal to amend its regulations is well established. When a local zoning commission considers amendments to the zoning regulations, it acts in a legislative capacity. In this capacity, the commission is vested with broad discretion. DJ Quarry Products, Inc. v. Planning Zoning Commission,217 Conn. 447, 450 (1991). "In such circumstances, it is not the function of the court to retry the case. Conclusions reached by the commissionmust be upheld by the trial court if they are reasonably supported by therecord. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. . . . The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached." (Citations omitted; emphasis added.) Calandro v.Zoning Commission, 176 Conn. 439, 440 (1979). This broad discretion must not be disturbed by the courts unless the aggrieved party can establish that the commission acted arbitrarily or illegally. Burnham v. Planning Zoning Commission, 189 Conn. 261, 266 (1983). In addition, "[w]here a zoning agency has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations." (Internal quotation marks omitted.) Protect Hamden/North Haven From ExcessiveTraffic And Pollution, Inc. v. Planning Zoning Commission, 220 Conn. 527,544 (1991). The record must support and provide a basis for the decision CT Page 5923 of the commission even when it is exercising a legislative function.Primerica v. Planning Zoning Commission, 211 Conn. 85, 99-101 (1989). Where an agency has rendered a formal, official, collective statement of reasons for its actions, the court should confine its review to the reasons given by a zoning agency and should not go behind such official collective statement to search the record for other reasons supporting the decision. Protect Hamden/North Haven From Excessive Traffic AndPollution, Inc. v. Planning Zoning Commission, supra, 220 Conn. 544.
 V DISCUSSION
On June 9, 1999, the commission enacted amendments to the Newtown zoning regulations by a unanimous vote, 5-0, and stated two reasons for the adoption of the additional restrictions on the use of the land in the APD:
 1. The Pootatuck Aquifer is a sole source aquifer that must be protected from contamination to ensure a present and future supply of safe and healthy drinking water. The adopted regulations will help to provide the necessary tools for this purpose.
 2. The regulations provide reasonable standards for the aquifer protection district that will be considered in all land use decisions for the protection of existing and potential public drinking water supply.
The commission also found that the amendments were consistent with the Newtown Plan of Conservation and Development.
On June 17, 1999, the commission amended the zoning map to have the APD boundary amended to conform with the Level B aquifer protection area delineated on the Level B map previously approved.
The questions presented are whether the adoption of these regulations and restrictions was arbitrary and illegal, whether the record contained support for their adoption, and whether the specific prohibitions and the new APD boundary rationally relate to subjects which the commission is authorized to regulate, i.e., protection of the aquifer and drinking water.
The Plaintiffs do not dispute that aquifer protection, including this particular aquifer, is an appropriate concern and goal. Legal authority CT Page 5924 for aquifer protection regulations, in a zoning context, is found in General Statutes § 8-2 which provides in relevant part: "Zoning regulations . . . shall be made with reasonable consideration for the protection of existing and potential public surface and ground drinking water supplies." Additional laws and regulations have been passed requiring mapping of both Level A and Level B well fields, mandating the commissioner of the DEP to adopt regulations for land use controls in aquifer protection areas, and for municipal boards or commissions to act as municipal aquifer protection agencies. See, e.g., General Statutes §§ 22a-354b, 22a-354n, 19a-37, and 22a-354o.
Aquifer protection issues, similar to wetlands issues are technical and beyond a laymen's knowledge. The department of environmental protection has adopted complex regulations regarding aquifer protection, and the legislature has required at least one member of the local aquifer protection agency or staff of the agency to be a person who has completed a course in technical training formulated by the commissioner. See, e.g., General Statutes §§ 22a-354b (1) and 22a-354o (c). Where the subject of regulation is beyond the knowledge or expertise of the lay members of a commission, an expert's opinion is important. See BuildersService Corporation v. Planning Zoning Commission, 208 Conn. 267, 294
(1988); Feinson v. Conservation Commission, 180 Conn. 421, 429 (1980). Although a commission may consider nonexpert evidence, the substantial evidence rule requires that "[a]n agency decision must be based on reliable evidence made public and the applicant must have an opportunity to respond to agency concerns." (Internal quotation marks omitted.)Manatuck Associates v. Conservation Commission, 28 Conn. App. 780, 793
(1992).
 A Expansion of the APD and the Two Acre Requirement
Prior to the 1999 amendments to the zoning regulations, Hall's property was outside the APD. The amendments, however, added to the area constituting the APD due to the adoption of Level B aquifer mapping. The amendments also expanded the prohibited uses in the APD, and changed the permitted uses to include the following: single-family dwellings with two or more acres of land per dwelling, open space and passive recreation, managed forest land, and wells and accessory equipment for the purpose of providing the public water supply. Newtown Zoning Regulations §§ 4.04.200 and 4.04.300. Hall appeals from the inclusion of his property in the APD and from the more restrictive requirement of two acres for residential building lots instead of the one acre previously applicable to his property located in a R-1 zone. He claims that there is no support in the record for these changes. The court disagrees. CT Page 5925
The Plaintiffs request the court to look at and give credence to only selected portions of the record which support their claims. However, on an appeal from a decision of the commission exercising its legislative powers, the question "is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached." Burnham v. Planning Zoning Commission, supra,189 Conn. 265. The decision must be upheld if the reason given is valid, reasonably supported by the record and pertinent to the consideration which the commission was required to apply under the zoning regulations. Id. Credibility and weight of the evidence are questions for the commission. Calandro v. Zoning Commission, supra, 176 Conn. 440.
In addition to other supportive testimony and exhibits received at the public hearings, the commission received the following: a letter from the DEP to the commission advising that Level B mapping should be used for aquifer protection, at least until Level A mapping was completed (Return of Record [ROR], Item 42); a thorough informational presentation concerning the aquifer, its need for protection and the proposed regulations by the director of community development (ROR, Item 1, pp. 2-5, 37-38); information from the chairman of the Newtown conservation commission with an explanation of the derivation of the regulations and review of the expertise of those who did the work (ROR, Item 1, pp. 6,29-30; ROR, Item 53; ROR, Item 77); and a memorandum from a senior environmental analyst of the DEP dated April 3, 1998. (ROR, Item 37.) The record also included "The Newtown Plan and Development," adopted by the commission in 1993, which states that it is necessary that protective measures be taken for the Pootatuck Aquifer, and reports and testimony supporting a minimum lot size of two acres as a protective measure. (ROR, Item 73; ROR, Item 38, pp. 6-7, Attachment B, p. 45 [Gillis statement], p. 50 [Commissioner Winslow statement], pp. 71, 72 [Meek statement]. Therefore, contrary to Hall's claim, the commission had an abundance of reliable support for its actions concerning the boundary of the APD and the minimum residential lot size.
 B Sand and Gravel Removal; Vehicle Storage and Maintenance
Hall also challenges the amendments to the regulations which prohibit the mining or removal of sand and gravel and the maintenance of any commercial vehicles or construction equipment. Newtown Zoning Regulations § 4.04.300 J, N, and O. Hall's property is in R-1 and R-2 residential zones. Neither of these uses was allowed as a permitted use or accessory use in these zones prior to the amendments. Under § 4.01 of the Newtown zoning regulations, the only uses permitted in any zone, or the CT Page 5926 APD, are principal and accessory uses expressly allowed. Any use not expressly allowed is prohibited. Planning and Zoning Commission v.Gilbert, 208 Conn. 696, 708 (1988). Thus, even without the amendments to § 4.04.300, Hall could not engage in these activities and their adoption does not affect him.
The Plaintiffs in the Maguire appeal also raise this issue. All these Plaintiffs' arguments must fail, even if these uses were permitted before the amendments, because the evidence presented to the commission was sufficient to support the amendments adoption and to demonstrate their relationship to the protection of the aquifer and water supply. For example, at the public hearing, the conservation commission chairman testified that the presence of sand and gravel renovates water that drains into the aquifer and that the regulations had been devised and proposed by engineers, hydrologists and scientists. (ROR, Item 1, pp. 20, 29.) At the same hearing, the Plaintiffs' hydrologist testified that excavation below the water table would increase the potential for dangerous chemicals reaching the ground water. (ROR, Item 1, pp. 31-32.) He also indicated that more sand would assist in controlling greater spills of contaminants by heavy machinery. (ROR, Item 32.) The director of community development also testified and identified activities related to storage and maintenance of commercial vehicles or construction equipment as among the riskiest of land use categories, e.g., automotive service stations, machine shops, and radiator repair shops. (ROR, Item 38, Attachment B.) Also, a pharmacist with an engineering degree confirmed that the amount of sand and gravel over an aquifer is significant because it acts as a filter of surface water moving into the aquifer. (ROR, Item 5, pp. 66, 67, 70.)
 C Medical Offices and Beauty Salons
The Plaintiffs also appeal from the commission's adoption of the amendment that prohibits medical or dental offices, veterinary hospitals, beauty and nail salons, funeral parlors, and research or medical laboratories in the APD except when connected to public sewers and water. The Plaintiffs assert that the record contains no justification for the prohibited retail uses and that this restriction "greatly limits the `universe' of tenants available to the owner, without any regard to whether the specific operation in question is harmful to the aquifer." (Plaintiffs' Brief, p. 39.)
The record contains a September 8, 1992 memorandum, previously referred to, from Elizabeth Stocker, director of community development to the planning and zoning commission. (ROR, Item 38.) This memorandum summarizes CT Page 5927 information concerning environmental and natural resource issues that were facing Newtown, including the need to develop an updated and comprehensive aquifer protection program for maintenance of a safe and viable water supply. This issue was designated a priority. Director Stocker, in this regard, stated that "[a]ctivities that pose the leastamount of risk and the highest recharge potential will be priorities forlocation within the aquifer." (Emphasis added.) (ROR, Item 38, p. 7.) Attached to this memorandum, as Attachment B, is a "Ranking of Land Use Categories by Their Risk to Groundwater Quality." In the category described as uses posing the "most risk" are "medical arts" and "beauty shops." This classification, a part of the record, was sufficient to cause the commission concern and to permit it to take steps to eliminate this risk. Accordingly, there is sufficient evidence in the record to support the regulation.
If, as is contended by the Plaintiffs and conceded by the commission, there may be certain types of medical offices which most likely would not affect or impact the aquifer or the safety of the drinking water, this would not, in and of itself, be sufficient ground to invalidate the present regulation. The record contains support for the prohibition as adopted. Consideration of a modification or refinement would more appropriately be addressed by an application to amend the language of the present restriction rather than the present appeal.
The Plaintiffs also argue that although "biomedical waste" or some other form of radioactive material in a medical office is something that might concern the commission, these substances are already regulated by existing state laws and, therefore, violations are for others to regulate. This argument is unavailing. The fact that there are other laws or regulations which address related issues and/or a risk to the water supply does not bar the commission from fulfilling its function of protecting the aquifer.
 D Illegal Delegation of Power
The Plaintiffs contend that authority given to the Newtown conservation commission in § 4.04.500 of the zoning regulations for the granting of a special exception is an illegal delegation of power. Section 4.04.400 provides the circumstances under which special exceptions may be granted. It also specifically prohibits such an exception where the proposed use is prohibited in § 4.04.300, the section containing all the prohibitions from the amendments which are the subject of this appeal. Because these activities would not qualify for a special exception, the Plaintiffs are not harmed by any delegation to the CT Page 5928 conservation commission contained in this section, and the court need not rule on this issue. The present appeal relates to the legislative function of adoption of regulations and the reference to review by the conservation commission complained of, Section 4.04.500, applies only to special exceptions.
The court will note, however, that review by the conservation commission is appropriate in light of its designation as the town's agency to regulate under the aquifer protection program and its limited function to report and make recommendations to the planning and zoning commission regarding applications for special exceptions. The planning and zoning commission is entitled to the assistance and comments from other municipal agencies and officials. See Frito-Lay, Inc. v. Planning Zoning Commission, 206 Conn. 554, 571 (1988); Holt-Lock, Inc. v. Planning Zoning Commission, 161 Conn. 182, 185 (1971); Hawkes v. Town Plan Zoning Commission, 156 Conn. 207, 212 (1968).
 E Internal Inconsistency of Regulations
The Plaintiffs claim that there is an internal inconsistency between certain sections of the regulations relating to the APD. The court fails to see any inconsistency in the regulations and the Plaintiffs' claims on this issue are not relevant to and do not impact this decision.
 VI CONCLUSION
The court finds that the reasons given by the commission for adopting the contested amendments are valid and reasonably supported by the record. Further, there exists a rational relationship between the amendments and the town's legitimate zoning goals. Accordingly, the Plaintiffs' appeals are dismissed.
Hiller, J.