[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Judith and Ira Ellenthal (the Ellenthals), appeal from a decision of the defendant, Inland Wetlands and Watercourses Agency of the Town of Greenwich (IWWA or agency), denying the Ellenthals' application to conduct regulated activities as defined in General statutes § 22a-38(13)[1], in connection with the proposed construction of a two car garage on their property located on Tyler Lane in Greenwich.
 BACKGROUND
The Ellenthals are the owners of certain real property located on Tyler Lane in Greenwich. (Appeal, ¶ 1). The subject property contains two areas of wetlands. (Return of Record [ROR]: Item 1). In February 1992, Judith Ellenthal applied to the IWWA for a wetlands permit in order to build a single family house on the property with a footprint of approximately 2,000 square feet, and a total floor area of 3,500 to 4,000 square feet. (ROR: Item 1). The proposed house was significantly larger than the average house in the immediate area. In January 1993, the IWWA unanimously denied the application. The IWWA's reasons for denial of the application were: "(1) severe sedimentation, erosion and downstream siltation; (2) potential flooding impacts on adjacent properties; (3) the lack of an adequate analysis of feasible and prudent alternatives; and (4) an inadequate plan to mitigate for the loss of wetlands." Ellenthal v. Inland Wetland Watercourses Agency, Superior Court, judicial district of Stamford-Norwalk at Norwalk, Docket No. 129782 (April 19, 1994, Alander, J.); (ROR: Item, 1). Ms. Ellenthal appealed and the court dismissed the appeal. See Ellenthal v. Inland Wetland CT Page 11868Watercourses Agency, supra, Superior Court, Docket No. 129782.
In May 1994, Ira Ellenthal submitted another application to the IWWA seeking permission to construct a smaller single family house with detached garage on the subject property. (ROR: Item, 4). On August 1, 1994, the IWWA granted the permit with conditions. (ROR: Items 25, 26, and 27). The proposed detached garage had been eliminated from the applicant's plans in a revised plan that was submitted prior to approval of the application. (ROR: Items 22 and 25). The revised plan included a two car garage within the gross floor area of the proposed house. (ROR: Item 22). In approving the application, the IWWA stated that the construction activities associated with the single family residence were regulated activities not involving a significant impact or major effect on the inland wetland and watercourse areas as defined in § 2.O of the Greenwich Inland Wetland and Watercourse Regulations. (ROR: Item 26) .
While construction on the property was underway, Mr. Ellenthal sought to modify his permit, by application dated June 23, 1995, to allow for the construction of a two car detached
garage. (ROR: Items 44 and 46).
A public hearing on the application to modify was held on February 12, 1996. (ROR: Item 82). On April 29, 1996, the IWWA voted unanimously to deny the application. (ROR: Items 93, 94, and 95). The IWWA concluded that the proposed construction of the detached garage involved regulated activities that could have significant impact and adverse effect on the inland wetland and watercourses involved. (ROR: Item 96). Specifically, the IWWA made the following findings:
1. The purpose of the proposed activities was to modify the Ellenthal permit and to construct a detached garage;
2. An ecological evaluation of the affected inland wetland and watercourse area is contained in the Agency staff report, field investigation and data sheets and supplemental staff reports;
3. The original permit allowed the construction of a single family residence with drainage structures and improvements including a garage within the structure;
4. The applicant decided not to build the garage within the CT Page 11869 single family residence as authorized on the permit map;
5. The proposed detached garage was as close as seven feet to a regulated inland wetland and watercourse area. This setback did not meet the Agency's minimum guideline setback of 35 feet for activities within a non-drinking watershed;
6. The Agency found that there was at least one feasible and prudent alternative to the proposed garage location and that had been approved by the agency within the existing single family residence when it issued the permit;
7. An adequate analysis of other feasible and prudent alternatives as required by state statute was not presented;
8. The regulated area on the property consists of a watercourse corridor and approximately .142 acres of Ridgebury wetland soils as delineated on the permit map. The watercourse and wetland area lies within the Mianus River/Cos Cob Harbor watershed;
9. The proposed detached garage would further reduce the habitat value of one of the few remaining wooded wetland habitats in Riverside that are located on this tributary to the Mianus River;
10. The potential adverse environmental impacts associated with the proposed detached garage include additional sedimentation and erosion control problems during construction because not all sedimentation and erosion controls are 100% effective; the impact of day to day living activities around the proposed structure because of an inadequate buffer between the structure and the regulated wetland/watercourse. (ROR: Item 94).
The Ellenthals appeal from the IWWA's denial of their application for permit modification. They allege that the IWWA acted illegally, arbitrarily and abused its discretion in that: "(a) the substantial evidence of the administrative record indicates: (i) plaintiffs' application satisfies all factors for consideration as provided by General Statutes § 22a-41(a)[2]; (ii) plaintiffs' proposed two car garage is located outside a wetlands or watercourse, is only located within a 35 foot setback area, does not involve significant activity and will not adversely impact any wetlands or watercourse; (iii) plaintiffs' two car garage as proposed, does not offer a feasible and prudent CT Page 11870 alternative as provided by General Statutes § 22a-41(b)[3]; (b) the record does not contain substantial evidence to support the Agency's decision"; and (c) at least one agency member had predetermined the application prior to the public hearing and prior to rendering his/her decision, thereby making the Agency's decision void. (Appeal, ¶ 6).
 JURISDICTION
General Statutes § 22a-43 governs appeals taken from decisions made pursuant to General Statutes §§ 22a-36 to22a-45 inclusive (the "Inland Wetlands and Watercourses Act"), by an Inland Wetland and Watercourses Agency. As an initial matter, the court must find that the Ellenthals are aggrieved by the IWWA action. "It is . . . fundamental that, in order to have standing to bring an administrative appeal, a person must be aggrieved."Med-Trans of Connecticut, Inc. v. Dept. of Health AddictionServices, 242 Conn. 152, 158, 699 A.2d 142 (1997). This court finds that the Ellenthals have properly pleaded and proved aggrievement based on the allegations in counts 1, 4, and 7 of the appeal, Judith Ellenthal's testimony before this court, and the copy of the deed of the subject property which was submitted into evidence at trial. As the owners of the subject property and unsuccessful applicants for a permit modification, the Ellenthals are aggrieved. Huck v. Inland Wetland WatercoursesAgency, 203 Conn. 525, 530, 525 A.2d 940 (1987).
This court also finds that this appeal was commenced in a timely fashion, by service of process upon the proper parties in compliance with General Statutes § 22a-43(a)[4].
 SCOPE OF REVIEW
"In challenging an administrative agency action, the plaintiff has the burden of proof . . . The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. Rather than asking the reviewing court to retry the case de novo . . . the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision . . .
"In reviewing an inland wetlands agency decision made pursuant to the act, the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given . . . The CT Page 11871 evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Citations omitted; internal quotation marks omitted.) Samperi v. Inland Wetlands Agency,226 Conn. 579, 587-88, 628 A.2d 1286 (1993).
The court will first address the Ellenthals' claim that the IWWA's decision is void because of predetermination on the part of at least one IWWA member. "Because public officers, acting in their official capacities, are presumed, until the contrary appears, to have acted legally and properly . . . the burden on such a claim rests upon the person asserting it." (Citations omitted.) Huck v. Inland Wetland Watercourses Agency, supra,203 Conn. 537. An inland wetlands agency acts in an administrative [and adjudicative] capacity when it reviews an application for a regulated activity. R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice, (1993) § 1.6, p. 14. "[T]here is a presumption [however,] that administrative board members acting in an adjudicative capacity are not biased . . . To overcome the presumption, the plaintiff . . . must demonstrate actual bias, rather than mere potential bias, of the board members challenged, unless the circumstances indicate a probability of such bias "too high to be constitutionally tolerable." (Citations omitted; internal quotation marks omitted.) O G Industries, Inc. v. Planning ZoningCommission, 232 Conn. 419, 429, 655 A.2d 1121 (1995).
The court finds that the Ellenthals have failed to meet their burden of demonstrating predetermination. The Ellenthals did not examine any IWWA members either by deposition or at the trial of this appeal. Instead, they rely on a brief exchange between agency members at the public hearing on their modification application, held on February 12, 1996. (See transcript, ROR: Item 83 p. 54-55). The submitted transcript excerpt falls far short of demonstrating actual bias and overcoming the presumption that agency members did not act with bias. When agency member Graham stated, "If we're going to vote this down, would it be a nicety to the applicant to do it now, rather than wait?", she was quickly reminded that there was more data to be received and that the agency could not prejudge its vote. (Transcript, ROR: Item CT Page 11872 83 p. 54-55). In fact, Ms. Graham herself, then moved that the hearing be kept open to receive new information. (Transcript, ROR: Item 83 p. 54-55, lines 17-19). This exchange, without anything more, fails to demonstrate bias by Ms. Graham or any other agency members. Therefore, the court rejects the Ellenthals' claim of predetermination.
The court has carefully reviewed the record in this appeal and is fully aware of the history of the permit applications regarding this property. The court notes, with interest, that the Ellenthals originally sought a detached garage (ROR: Items 4, 7, and 21), but eliminated the detached garage from the plans after the public meeting on July 25, 1994. (ROR: Items 21 and 83 p. 13-14). The plans that were part of the original permit approval granted August 1, 1994, had eliminated the detached garage and instead, showed a garage within the structure. (ROR: Item 83 p. 7-9). On August 10, 1994, a mere 10 days later, a revision was submitted which included all the corrections made by the IWWA such as plantings, but which removed reference to the garage. (Transcript, ROR: Item 83 p. 7-9). Just 10 months later, in June 1995, before construction was completed, the Ellenthals sought to modify the permit to allow for construction of a detached garage.
One of the IWWA's findings is that "[t]he applicant decided not to build the garage within the single family residence as authorized on the permit map. " (ROR: Item 94, agency finding #4). Thus, the defendant argues that "[t]he only reason Ellenthal needed to seek modification is because he voluntarily and unilaterally decided to expand the size of his house rather than construct and locate a garage within the single family residence as he had proposed to the Agency and which had been considered and approved by the Agency in issuing Wetlands Permit #94-134." See Defendant's Brief dated July 22, 1997 p. 2-3. The emotions evoked by the history of this property were captured by comments made at the February 12, 1996 public meeting by agency member Stone. Mr. Stone stated, "[t]his property, since the beginning of this series of applications, has suffered, and the Agency has suffered the death of a thousand cuts. The property never should have been built on at all. It was built on only by ignoring our own regulations. As we've already rehearsed what happened to the garage within the house, that it could have been put, but you chose not to do it. Now comes the next cut of putting the garage outside and even more insulting, the setback and buffers of these two — this wetland area." (ROR: Item 83 CT Page 11873 p. 53-54).
The court can and does appreciate how the IWWA might be disturbed by the timing and nature of the modification sought given the prior history. Previous exchanges and posturing, however, cannot, standing alone, constitute a valid reason for denial. Indeed, had several years passed before the plaintiffs sought this same detached garage, the history of this property would not be as important or noteworthy. While the sequence of events does create, what some might consider, an air of premeditation, this factor alone cannot form the basis of denying the application notwithstanding the unpleasant aftertaste.
The Ellenthals next claim that the record does not contain substantial evidence to support the IWWA's decision. In concluding that the proposed garage construction involved regulated activities that could have significant impact and adverse effect on the wetland and watercourses involved, the IWWA made ten specific findings as previously noted by this court. The court finds that most of these findings are simply statements of act, and only findings numbered 6, 7, and 9 provide possible reasons for denial of the application.
Agency finding number 6 is that there is at least one feasible and prudent alternative to the proposed garage location, and that alternative had been approved within the existing single family residence. Pursuant to General Statutes § 22a-41(b), the agency cannot issue a permit to conduct a regulated activity unless it makes a finding that a feasible and prudent alternative does not exist. See footnote 2. At the time of the IWWA's decision in this case, "feasible and prudent" as used in the statute was defined by caselaw as, "not only sound from an engineering standpoint but . . . also economically reasonable in light of the social benefits derived from the activity . . . An alternative will be deemed to be a feasible and prudent alternative only if it meets both criteria." (Citation omitted.)Samperi v. Inland Wetlands Agency, 226 Conn. 579, 595,628 A.2d 1286 (1993).[5]
The Ellenthals' expert, Mr. D'Andrea, an engineer, testified at the public hearing on February 12, 1996, that the original idea of placing the garage inside the dwelling turned out to be "impractical" and not a realistic alternative, and therefore, the architect redesigned the building plans to delete the garage from the footprint of the dwelling. (ROR: Item 83 p. 12-13). More CT Page 11874 importantly, Mr. D'Andrea testified that the current footprint as constructed was 960 square feet, and that maintaining even a 17 x 19 foot garage within this dwelling would leave "virtually no living space on the lower level." (ROR: Item 83 p. 17). This testimony contradicts a finding by the IWWA that the previously approved garage within the dwelling is a feasible and prudent alternative as that phrase is defined by caselaw.
There was also a colloquy at the public hearing regarding the possibility or practicality of a 10 x 20 foot or 12 x 20 foot garage within the dwelling. As Mr. D'Andrea pointed out to the agency, the plaintiffs were not proposing a garage of those dimensions, and in fact, the plans originally approved by the agency indicated a 17 x 19 foot garage within the dwelling. (ROR: Item 83 p. 18 and 20). Significantly, when Mr. D'Andrea commented that those dimensions were not the current proposal, agency member Blanch stated, "I know that . . . I just want to see where we're coming from and where we're going." (ROR: Item 83 p. 20-21). Member Blanch further stated, "We're going back to your original proposal and re-masticating it." (Emphasis added) (ROR: Item 83 p. 21).
As previously noted by this court, the history of the applications related to this property is not alone a valid basis for denying the plaintiffs' application. The court finds that agency finding number 6 is not supported by substantial evidence in the record, and therefore, it cannot form the basis for the denial of the Ellenthals' application.
Agency finding number 7 is that an adequate analysis of other feasible and prudent alternatives as required by state statute[6]
was not presented. The court finds that the record does not support such a finding.
The plaintiffs' environmental expert, Judith Slayback of Environmental Land Solutions, analyzed and presented other alternatives and their respective impacts. (ROR: Items 80 and 83). Ms. Slayback specifically noted that the proposed garage would not be located within the wetlands but would be partially located within the agency designated setback area. (ROR: Items 80, and 83 p. 24). Ms. Slayback also noted that there is no place to put a detached garage on the site other than in the buffers or setback areas because there are no nonbuffer areas large enough or contiguous enough on which to put a garage. (ROR: Item 83 p. 23). CT Page 11875
Ms. Slayback then identified the possible alternatives to the proposed garage. The first alternative would be to not build a garage at all and to park the car(s) on the driveway or lawn. She described the impact of this alternative as increasing the possibility of pollutants such as air conditioning fluid, oil, gas and grease, leaking directly into the ground.
The next alternative is to build a one car garage 19 x 24 feet. This alternative would locate the garage 9 feet from the easterly wetlands at its closest point and 24 feet from the westerly wetlands at its closest point. The overall setback encroachment would be 320 square feet less than the proposed garage.
The third alternative, the proposed plan, would be located 7 feet from the easterly wetlands at its closest point and 19 feet from the westerly wetlands at its closest point.
The defendant argues that there is an alternative of a less intrusive garage that would have less adverse impact on the wetlands, such as a smaller garage, or one with a different orientation, in addition to alternative buffer areas and further wetland mitigation. See Defendant's Brief, dated July 22, 1997, p. 18. As Ms. Slayback testified, there is no way to locate a detached garage on this property in a nonbuffer area. A smaller garage was discussed, i.e., a 19 x 24 foot garage. A garage of this size in the same location as the proposed 24 x 24 foot garage would be an additional 2 feet from the easterly wetlands at its closest point and an additional 5 feet from the westerly wetlands at its closest point. (ROR: Item 83 p. 25-26). In light of the unrebutted expert testimony of Ms. Slayback that the proposed garage would not affect the function of the wetland (ROR: Item 83 p. 36; Item 80), the court finds that the evidence in the record shows that the difference between the encroachment caused by the 19 x 24 garage and the proposed 24 x 24 garage is negligible and there is no adverse impact on the wetlands.
The court finds that the record reflects that an adequate analysis of the alternatives to the proposed garage was presented by the plaintiffs, and therefore, agency finding number 7 is not supported by substantial evidence.
Next, the IWWA found that the proposed detached garage would further reduce the habitat value of one of the few remaining CT Page 11876 wooded wetland habitats in Riverside that are located on that tributary to the Mianus River. The court concludes that the record does not contain substantial evidence supporting this finding.
Ms. Slayback testified that in 1992 initial environmental/wetland assessments were done on the Ellenthal property by both herself, on behalf of the Ellenthals, and by Mr. Jontos of Land Tech, on behalf of the Agency. She testified that both she and Mr. Jontos concurred that the only noticeable, measurable function of the two wetlands on the property was for "the conveyance of storm water runoff in the lower wetland on the western part of the site, through which the ditch runs." (ROR: Item 83 p. 24). They further concurred in their opinion that the "wetland that comes into the central part of the site did not exhibit typical wetland dependent vegetation nor wetland dependent habitat, nor did it have a fin fish habitat." (ROR: Item 83 p. 24). Ms. Slayback also testified that the wetlands on this property "[do] not offer anything significant in terms of storm water storage, pollutant renovation, habitat, wetland-related habitats, those kinds of functions that are attributable to very viable wetland functioning." (ROR: Item 83 p. 46). She also stated that the grades and characteristics of the wetland floor will not change if the proposed garage is built, and that no vegetation growing in the wetland will be removed. (ROR: Item 57). She specifically noted that the buffer area to be affected does not contain significant size or unusual species of vegetation. Ms. Slayback went on to state: "[i]n my professional opinion, there is little . . . functional merit to ascribe to this particular wetland. Parking a car and storing yard equipment in a garage in the buffer will not have a harmful effect to the environment." (ROR: Item 57).
Additionally, after a brief exchange with agency member O'Brien, regarding the benefits of wetlands to birds, Ms. Slayback testified as follows: "And we're not going to destroy the wetlands, and we are putting vegetation that has been selected because of its wildlife value which will be upgrading over what is currently there in the wetlands and in the buffers themselves." (ROR: Item 83 p. 47). She further noted that the garage would "be built on grade and require minimal earth moving activities, adjacent to the existing drive and partially within the setbacks from the wetlands. Long term mitigation activities are proposed to compensate for the setback encroachment. (ROR: Item 81). CT Page 11877
In addition to Ms. Slayback's testimony, Mr. D'Andrea testified as follows: "There would be no machine work anywhere within the wetland limits or to construct the building. There would not be any necessity to have the machine in the buffer outside of the garage, if the building is constructed as proposed.
. . . [A]ll we're doing is encroaching slightly into that buffer, recognize that the buffer is an added enhancement and protection for the wetland functions, as Mrs. Slayback pointed out. The only function — significant function of this particular area is that passage of the surface water toward the drainage way, which is on the western side of the property that we're doing. The Agency asked us to add plantings within that wetland area to enhance that aesthetic and habitat function during the original application. And we're willing and able to add more, if appropriate, in that upland area." (ROR: Item 83 p. 16 and 50).
The expert testimony regarding the lack of adverse impact on the wetland was not rebutted by any other expert testimony. The IWWA disregarded the only expert testimony offered and drew its own conclusion. "While we recognize that an administrative agency is not required to believe any of the witnesses, including expert witnesses . . . it must not disregard the only expert evidence available on the issue when the commission members lack their own expertise or knowledge." (Citation omitted.) Tanner v.Conservation Commission, 15 Conn. App. 336, 341, 544 A.2d 258
(1988). "As noted in Feinson v. Conservation Commission . . . : `If an administrative agency chooses to rely on its own judgment, it has a responsibility to reveal publicly its special knowledge and experience, to give notice of the material facts that are critical to its decision, so that a person adversely affected thereby has an opportunity for rebuttal at an appropriate stage in the administrative proceedings.'" Id., 341 n. 2.
The court concludes that the IWWA acted without substantial evidence to refute the plaintiffs' experts.
The court concludes that none of the IWWA's reasons for denial of the plaintiffs' application are supported by substantial evidence. Accordingly, the court sustains the Ellenthals' appeal and remands to the Greenwich Inland Wetlands and Watercourses Agency with the directive to issue the permit to conduct the regulated activity subject to appropriate and reasonable conditions as might pertain thereto. CT Page 11878
BY THE COURT
RICHARD F. COMERFORD, JUDGE