O and G Industries, Inc. *v.* Planning and Zoning
Commission of the Town of Beacon Falls
(15063)

Callahan, Norcott, Palmer, F. X. Hennessy and M. Hennessey, Js.

Argued November 29, 1994—decision released March 28, 1995

*Thomas F. McDermott, Jr.*, with whom was *Kenneth W. Merz*, for the appellant (plaintiff).

*Robert F. Carter*, for the appellee (defendant).

NORCOTT, J. The dispositive issue in this appeal is whether the plaintiff, O and G Industries, Inc., had an adequate remedy available from the defendant, the Beacon Falls planning and zoning commission (commission), and therefore was required to exhaust its administrative remedies prior to seeking relief in the Superior Court. The plaintiff instituted this action seeking a declaratory judgment that its earth processing operation, located on its land in Beacon Falls, constituted a valid nonconforming use of its land. The trial court dismissed the action for lack of subject matter jurisdiction on the ground that the plaintiff had failed to exhaust its administrative remedies. The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the trial court's judgment of dismissal.

The relevant facts and procedural history are as follows. The plaintiff owns and operates an earth mining, excavation and gravel processing facility located in an industrial zone within the town of Beacon Falls. In 1988, the commission amended the Beacon Falls zoning regulations (regulations) in response to a perceived risk that, as the mines in town were gradually depleted, the focus of local mining enterprises would shift from mining operations to permanent processing operations utilizing earth products excavated outside of the town. In particular, the amendments designated all accessory uses, such as the processing of earth products, as nonconforming uses, which require a special permit under § 64.11 of the regulations.[1]

Previously, the plaintiff and two other gravel processing facilities in Beacon Falls had challenged the constitutionality of the amendments claiming that they were facially invalid because they did not expressly exempt nonconforming principal uses. See General Statutes § 8-2.[2] This court disagreed, stating that "although lacking an express exemption for nonconforming principal processing uses, [the amendments] implicitly exempt such uses." *D & J Quarry Products, Inc.* v. *Planning & Zoning Commission*, 217 Conn. 447, 455, 585 A.2d 1227 (1991). Because we lacked the requisite factual record upon which to base a determination, we declined to decide whether the operations on the parcels at issue constituted nonconforming prin-

[1] The commission contends that under the regulations, earth products processing has always been permitted only as an accessory use and not as a principal use. Accessory uses are, by definition, uses "located on the same lot, and must be subordinate and customarily incidental to, the principal use. *Lawrence* v. *Zoning Board of Appeals*, 158 Conn. 509, 512, 264 A.2d 552 (1969)." *D & J Quarry Products, Inc.* v. *Planning & Zoning Commission*, 217 Conn. 447, 456, 585 A.2d 1227 (1991).

[2] General Statutes § 8-2 provides in relevant part: "REGULATIONS. . . . Such regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations. . . ."

cipal uses. Instead, our decision contemplated that further proceedings would necessarily have to be held to develop a factual historical record as to whether the plaintiff's gravel processing of foreign materials was an existing use in November, 1960, the effective date of the regulations. Id., 450–53.

On August 1, 1991, the plaintiff submitted an application to the commission to renew its existing special permit pursuant to § 64.11.2[3] of the regulations and

[3] Section 64.11 of the Beacon Falls zoning regulations provides: "64.11 EARTH PRODUCTS PROCESSING: After September 22, 1988, all commercial screening, sifting, washing, crushing or other processing of earth products in all zones is prohibited, and the use of any land in any zone for such processing of earth products is prohibited. Any earth products processing facility which is located in any industrial or industrial park zone and which constitutes a valid prior non-conforming use, and any earth products processing facility in a residential zone until such use can be terminated, are subject to the following requirements for issuance of a permit to operate:

"64.11.1 No earth products shall be screened, sifted, washed, crushed, or otherwise processed except as authorized by a permit granted by the Commission under this subsection. Issuance of a permit to any processing facility located in a residential zone does not constitute recognition that such use is a valid non-conforming use.

"64.11.2 APPLICATION: Application for a permit under this subsection shall be submitted annually in writing to the Zoning Enforcement Officer and to the Commission. All applications shall be accompanied by a written statement specifying the hours and days of the week when the operation is to be conducted, the number, type and capacity of trucks and other equipment to be used, and proposed vehicular access to the lot. The Commission may request the submission of such additional information as it deems necessary in order to decide upon the application. Duration of a permit shall be one year. Failure to apply for a permit under this Section shall terminate a non-conforming use.

"64.11.3 APPLICATION FEE: $75.00

"64.11.4 PROCEDURE: Upon receipt, the Zoning Enforcement Officer shall transmit the application and accompanying statement to the Commission. Within sixty-five (65) days after receipt of a completed application and statement meeting the requirements of Paragraph 64.11.2, the Commission shall hold a public hearing on the application. Notice of the public hearing shall be published [in various newspapers for required intervals]. After the public hearing the Commission shall approv[e] or disapprove the application. The applicant may consent in writing to any extension of the time of public hearing and action on the application. The grounds for disapproval of

to register its land as a nonconforming use pursuant to § 10.6[4] of the regulations. Thereafter, on September 10, 1991, the plaintiff initiated an action in the Superior Court seeking a declaratory judgment that its operation "constitutes a valid, pre-existing nonconforming use of the above-described property as a principal use of land and is not prohibited by the regulations so enacted." On October 2, 1991, the commission held a public hearing on the plaintiff's application at which the plaintiff was invited to, and did, introduce evidence regarding the historical use of the property. Some tes-

---

an application shall be stated in the records of the Commission. Failure to submit additional information requested by the Commission under Paragraph 64.11.2, within the period for action on the application, shall be grounds for disapproval of the application.

"64.11.5 APPROVAL: After the public hearing the Commission may grant the application to permit the processing of earth products if it finds that the following standards and conditions will be met . . .

"f. After September 1, 1990, no earth products excavated outside the Town of Beacon Falls shall be screened, sifted, washed, crushed or otherwise processed at any earth products processing facility or site in the Town of Beacon Falls; provided, that stockpiles of earth products excavated outside of the Town of Beacon Falls which are in existence as of September 1, 1990, must be entirely processed as of September 1, 1991."

[4] Section 10 of the Beacon Falls zoning regulations, entitled "Nonconformity," provides in part: "10.1 CONTINUING EXISTING NON-CONFORMING USES. The lawfully permitted use of land or structures existing at the time of the adoption of the zoning ordinance or any amendment thereto may be continued, although such use does not conform to the standards of the district in which such land or structure is located. Said uses shall be deemed non-conforming uses. . . .

"10.6 REGISTRATION OF NON-CONFORMING USE OF LAND OR STRUCTURE: Any non-conforming use of land or structures shall be registered in the office of the Planning and Zoning Commission within one (1) year after the adoption of the Zoning Regulations. Such registration shall include the identifications of the premises, a description of the nature and extent of the non-conforming use and, if necessary to description, a plot plan, drawn to scale, showing property lines, all structures and any other pertinent information, and an affidavit by the owner as to the date since which such non-conforming use has existed. Failure to so register shall place the burden of proof on the property owner that any alleged non-conforming use of land or structure legally existed at the time this ordinance or any amendment thereto became effective."

timony was introduced in this regard, but the hearing was continued until October 30, 1991, to allow the plaintiff the opportunity to offer further evidence.

On October 17, 1991, prior to the scheduled hearing, the plaintiff sought a temporary injunction prohibiting the commission from proceeding on its application. The court granted the plaintiff's request on November 14, 1991. On October 13, 1993, after a trial on the merits and consideration of supplemental briefs on the jurisdictional issue, the trial court dissolved the temporary injunction and dismissed the declaratory judgment action for the failure of the plaintiff to exhaust its administrative remedies. The plaintiff has appealed from the judgment of dismissal.

While the plaintiff in its brief has raised a number of reasons why it is not required to exhaust administrative remedies, these claims raise but two issues: (1) whether the commission lacked jurisdiction initially to decide the status of the plaintiff's property because pursuing an application with the commission would have been inadequate or futile; and (2) whether the regulations that the commission would have applied were unconstitutional in that they constitute the taking of a vested property right without just compensation.

I

The plaintiff claims that the trial court improperly dismissed its appeal for failure to exhaust administrative remedies because the commission lacked jurisdiction initially to decide that the plaintiff's property was a valid principal nonconforming use. Specifically, the plaintiff claims that it did not have to fulfill the exhaustion requirement because the commission could not have provided adequate relief, namely, a declaration that its use of its land constituted a valid nonconforming principal use. Alternatively, the plaintiff maintains

that application to the commission would have been futile because the commission was not impartial. We disagree and conclude that because the plaintiff had an adequate remedy under the regulations, it was required to exhaust its administrative remedies before seeking redress in court.

"It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter. *Connecticut Life & Health Ins. Guaranty Assn.* v. *Jackson,* 173 Conn. 352, 358–59, 377 A.2d 1099 (1977)." *Greater Bridgeport Transit District* v. *Local Union 1336,* 211 Conn. 436, 438, 559 A.2d 1113 (1989); see also *Pet* v. *Dept. of Health Services,* 207 Conn. 346, 350–51, 542 A.2d 672 (1988); *Concerned Citizens of Sterling* v. *Sterling,* 204 Conn. 551, 557, 529 A.2d 666 (1987); *Cummings* v. *Tripp,* 204 Conn. 67, 75, 527 A.2d 230 (1987); *LaCroix* v. *Board of Education,* 199 Conn. 70, 78–80, 505 A.2d 1233 (1986). Exhaustion is required even in cases where the agency's jurisdiction over the proposed activity has been challenged. *Cannata* v. *Dept. of Environmental Protection,* 215 Conn. 616, 621–22 n.7, 577 A.2d 1017 (1990); *Greater Bridgeport Transit District* v. *Local Union 1336,* supra, 438; *Florentine* v. *Darien,* 142 Conn. 415, 428, 115 A.2d 328 (1955); *Wilkinson* v. *Inland Wetlands & Watercourses Commission,* 24 Conn. App. 163, 586 A.2d 631 (1991). "This requirement 'reflects the legislative intent that such issues be handled in the first instance by local administrative officials in order to provide aggrieved persons with full and adequate administrative relief, and to give the reviewing court the benefit of the local board's judgment.' *Greenwich* v. *Kristoff,* 180 Conn. 575, 578, 430 A.2d 1294 (1980)." *Planning & Zoning Commission* v. *Craft,* 12 Conn. App. 90, 94, 529 A.2d 1328, cert. denied, 205 Conn. 804, 531 A.2d 937 (1987).

We have recognized, however, certain limited exceptions to the exhaustion requirement. Such exceptions include "where the available relief is inadequate or futile"; *Norwich* v. *Norwalk Wilbert Vault Co.*, 208 Conn. 1, 4, 544 A.2d 152 (1988); or where local procedures cannot effectively, conveniently or directly determine whether the plaintiff is entitled to the relief claimed. *Conto* v. *Zoning Commission*, 186 Conn. 106, 115, 439 A.2d 441 (1982); see also *Cummings* v. *Tripp*, supra, 204 Conn. 74–81; *Greenwich* v. *Liquor Control Commission*, 191 Conn. 528, 541, 469 A.2d 382 (1983); *Sullivan* v. *State*, 189 Conn. 550, 553–54, 457 A.2d 304 (1983); *Kosinski* v. *Lawlor*, 177 Conn. 420, 425, 418 A.2d 66 (1979); *Bianco* v. *Darien*, 157 Conn. 548, 554–55, 254 A.2d 898 (1969).[5] The plaintiff argues that these exceptions to the exhaustion requirement excuse its failure to pursue administrative remedies.

A

The plaintiff first claims that it should not be required to exhaust administrative remedies because the procedures and relief established by the commission's regulations, vis-a-vis its claim, are inadequate. We have previously determined that an administrative remedy is adequate when it could provide the plaintiff with the relief that it seeks and provide a mechanism for judicial review of the administrative decision. *Cannata* v. *Dept. of Environmental Protection*, supra, 215 Conn. 629.

---

[5] Another general exception to the exhaustion requirement applies "when the challenge is to the constitutionality of the statute or regulation under which the board or agency operates, rather than to the actions of the board or agency. *Conto* v. *Zoning Commission*, [supra, 186 Conn. 115]; *General Dynamics Corporation* v. *Groton*, 184 Conn. 483, 490, 440 A.2d 185 (1981); *Friedson* v. *Westport*, 181 Conn. 230, 233, 435 A.2d 17 (1980)." *LaCroix* v. *Board of Education*, supra, 199 Conn. 79 n.7. The plaintiff instituted such a challenge in *D & J Quarry Products, Inc.* v. *Planning & Zoning Commission*, supra, 217 Conn. 447, in which we upheld the facial validity of these regulations.

In the present case, the relief sought by the plaintiff is a declaration that its use of the property constitutes a valid nonconforming principal use. Such a declaration would enable the plaintiff to continue to process gravel materials without regard to their source. Two provisions of the regulations could provide the relief sought: (1) a special permit, pursuant to § 64.11; see footnote 3; and (2) registration of a nonconforming use, pursuant to § 10.6. See footnote 4. The plaintiff had attempted to avail itself of both provisions through its submission of an application to the commission on August 1, 1991.

The holder of a § 64.11 special permit is entitled to operate an earth products processing facility as an accessory use to its mining operations. See *D & J Quarry Products, Inc.* v. *Planning & Zoning Commission,* supra, 217 Conn. 455 (§ 64.11 pertains only to accessory uses). The only materials that are allowed to be processed under this permit, however, are those materials that are mined onsite—imported foreign materials are specifically prohibited. See Beacon Falls Zoning Regs. § 64.11.5 (f); footnote 3. Thus, the plaintiff contends that even if it were granted a special permit pursuant to § 64.11, it would not receive the underlying relief sought, i.e., permission to continue processing earth products indefinitely without regard to the source of the raw materials. See *Cannata* v. *Dept. of Environmental Protection,* supra, 215 Conn. 629 (granting of permit would give underlying relief sought, therefore required to submit to permit process); *Wilkinson* v. *Inland Wetlands & Watercourses Commission,* supra, 24 Conn. App. 163 (same). We agree with the plaintiff that the special permit process pursuant to § 64.11 would not provide an adequate remedy[6] and, therefore, the plaintiff is not required to seek a special permit.

---

[6] It is of course possible that in considering an application for a § 64.11 special permit, the commission could decide, on the basis of the historical

This does not, however, end our discussion. Section 10.6 enables a property owner to register a nonconforming use. See footnote 4; see also *Helbig* v. *Zoning Commission*, 185 Conn. 294, 306, 440 A.2d 940 (1981). Although the regulation provides that nonconforming uses should be registered within one year, the "[f]ailure to so register [merely places] the burden of proof on the property owner [to prove] that any alleged non-conforming use of land or structure legally existed at the time this ordinance or any amendment thereto became effective." Beacon Falls Zoning Regs. § 10.6. Such a remedy, if granted, would afford the plaintiff the relief it seeks, namely, recognition of the plaintiff's use of its property as a nonconforming use and the right to continue to process gravel materials without regard to their origin. In addition, if the commission denied the plaintiff's application to register its nonconforming use, the plaintiff could pursue an appeal to the Superior Court pursuant to General Statutes §§ 8-8 (b) and 8-9.[7] "Therefore, the [registration] process . . .

---

evidence ascertained in the application process, that the plaintiff was exempt because its use constituted a principal nonconforming use pursuant to General Statutes § 8-2. This possibility, however, does not negate the fact that, for the plaintiff, obtaining a § 64.11 special permit would not have been an adequate remedy.

[7] General Statutes § 8-8 provides in relevant part: "APPEAL FROM BOARD TO COURT. REVIEW BY APPELLATE COURT. . . .

"(b) Except as provided in subsections (c) and (d) of this section and sections 7-147 and 7-147i, any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located. The appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes. The appeal shall be returned to court in the same manner and within the same period of time as prescribed for civil actions brought to that court. . . ."

General Statutes § 8-9 provides: "APPEALS FROM ZONING COMMISSIONS AND PLANNING AND ZONING COMMISSIONS. REVIEW BY APPELLATE COURT. Appeals from zoning commissions and planning and zoning commissions may be taken to the superior court and, upon certification for review, to the appellate court in the manner provided in section 8-8."

is an adequate remedy available for the requested relief and is within the agency's authority to grant." *Cannata* v. *Dept. of Environmental Protection*, supra, 215 Conn. 629.

## B

The plaintiff also contends that the commission was not an impartial forum because, as evidenced by its members' allegedly hostile comments toward gravel processing operations, it would have been futile to seek a special permit and, therefore, it should be excused from fulfilling the exhaustion requirement. We find no merit to this argument.

Although we consistently have recognized an exception to the exhaustion requirement "where the available relief is . . . futile"; *Norwich* v. *Norwalk Wilbert Vault Co.*, supra, 208 Conn. 4; our review of the record reveals that the plaintiff's belief that it necessarily would be unavailing to apply to the commission to register its nonconforming use was purely speculative. It is futile to seek a remedy only when such action could not result in a favorable decision and invariably would result in further judicial proceedings. See *Kosinski* v. *Lawlor*, supra, 177 Conn. 425; *Planning & Zoning Commission* v. *Craft*, supra, 12 Conn. App. 95. "The law does not require the doing of a useless thing." *Corsino* v. *Grover*, 148 Conn. 299, 308, 170 A.2d 267 (1961).

"[T]here is a presumption [however,] that administrative board members acting in an adjudicative capacity are not biased. *Jutkowitz* v. *Department of Health Services*, [220 Conn. 86, 100, 596 A.2d 374 (1991)]; *Rado* v. *Board of Education*, [216 Conn. 541, 556, 583 A.2d 102 (1990)]. 'To overcome the presumption, the plaintiff . . . must demonstrate actual bias, rather than mere potential bias, of the board members challenged, unless the circumstances indicate a probability of such bias "too high to be constitutionally tolerable." ' *Rado*

v. *Board of Education,* supra, [556,] quoting *Withrow* v. *Larkin,* 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975). The plaintiff has the burden of establishing a disqualifying interest. *Jutkowitz* v. *Department of Health Services,* supra [100]; *Petrowski* v. *Norwich Free Academy,* [199 Conn. 231, 236, 506 A.2d 129, appeal dismissed, 479 U.S. 802, 107 S. Ct. 42, 93 L. Ed. 2d 5 (1986)]." *Clisham* v. *Board of Police Commissioners,* 223 Conn. 354, 362, 613 A.2d 254 (1992).

From our thorough review of the record, we are convinced that the commission has afforded, in good faith, the plaintiff ample opportunity to introduce evidence of the property's historical use and is not predisposed to decide this matter in a manner adverse to the plaintiff. To the contrary, the commission repeatedly has refused to render a final decision until it has had the opportunity to consider all pertinent evidence. Thus, the plaintiff has failed to demonstrate that the pursuit of its administrative remedy would be futile. Accordingly, the issue the plaintiff seeks to have litigated must be resolved by the commission through its established procedures for registering nonconforming uses and, if the plaintiff is unsuccessful in registering its land as a nonconforming use, by taking an appeal pursuant to General Statutes §§ 8-8 (b) and 8-9.

II

Finally, the plaintiff argues that by requiring it to obtain a special permit in order to continue to operate its gravel operations, the commission has deprived it of a vested property right in a nonconforming use without just compensation. We disagree.

Although it is true that zoning regulations cannot bar uses that existed when the regulations were adopted; General Statutes § 8-2; and " '[a] lawfully established nonconforming use is a vested right . . . entitled to constitutional protection' "; *Petruzzi* v. *Zoning Board*

*of Appeals*, 176 Conn. 479, 483–84, 408 A.2d 243 (1979); see also *Helbig* v. *Zoning Commission*, supra, 185 Conn. 306; *James J. F. Loughlin Agency, Inc.* v. *West Hartford*, 166 Conn. 305, 311, 348 A.2d 675 (1974); *Lampasona* v. *Planning & Zoning Commission*, 6 Conn. App. 237, 239, 504 A.2d 554 (1986); it has not yet been determined whether the plaintiff's property constitutes a valid nonconforming principal use. Thus, while it is possible that the plaintiff could have a vested property right, we cannot address this issue until the status of the plaintiff's property has been resolved by the commission.

Accordingly, we conclude that the trial court lacked jurisdiction to hear this complaint and properly granted the commission's motion to dismiss.

The judgment is affirmed.

In this opinion the other justices concurred.