[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 5874
I. Facts
The present matter is an appeal by the plaintiff, Cumberland Farms, Inc. (Cumberland), from the decision of the defendant, the Westbrook Zoning Board of Appeals (the board), denying its zoning application to reopen a gasoline station.
The return of record (ROR) reveals the following facts. The Bongiorni family formerly owned the property located at 1223 Boston Post Road, Westbrook, Connecticut (the property). (ROR, Exhibit 12). In 1941, it opened a gasoline station on the property and from 1975 through 1981, it leased the gasoline station to David S. Anderson. (ROR, Exhibit 12). Thereafter, the property was conveyed to the estate of John Bongiorni (the Bongiorni estate) and was leased to Thomas H. Matus d/b/a Tom's Super Saver Gas Station (Matus). (ROR, Exhibit 12).
In December 1988, it was discovered that underground gasoline storage tanks on the property leaked and contaminated the property as well as abutting property located at 1211 Boston Post Road, owned by Cumberland, which contained several retail spaces, including a Cumberland Farms store. (ROR, Exhibits 12; 13; 15; 16). Between January 4 and January 11, 1989, the Department of Environmental Protection (the DEP) ordered the removal of the gasoline storage tanks from the property. (ROR, Exhibit 12). On January 14, 1989, the DEP commenced remediation of the property. (ROR, Exhibit 12). As of November 15, 1993, the DEP incurred expenses of $348,228.44 in remediating the property and on February 14, 1994 filed a lien on the property. (ROR, Exhibits 12; 16).
On March 2, 1989, Cumberland brought suit against John Bongiorni, Trustee of the Bongiorni estate, and Matus for the damages it sustained as a result of the contamination of its abutting property and obtained an attachment of the property. (ROR, Exhibits 12; 13). The DEP intervened in that action to recover its costs from remediating the property. (ROR, Exhibit 12).
On May 13, 1994, Cumberland, the DEP, the Bongiorni estate and Matus filed a stipulation for judgment. (ROR, Exhibits 12; 16). Under the stipulated judgment, the Bongiorni estate transferred the property to Cumberland, Cumberland released its claims against the Bongiorni estate and Matus agreed to vacate the property. (ROR, Exhibits 12; 16). Additionally, the DEP released its lien and Cumberland entered into a consent order with the DEP to continue remediation of the property. (ROR, Exhibits 12; 16). On August 25, 1994, the Bongiorni estate conveyed the CT Page 5875 property to Cumberland. (ROR, Exhibits 12; 23).
During the time that the litigation and remediation were taking place, the Westbrook Zoning Commission revised its zoning regulations, which were adopted on May 28, 1991 and became effective on June 21, 1991, and are the regulations applicable to this matter. (ROR, Exhibit 26, p. 1-1). Section 4.55.01 of the new regulations prohibits the use of a "fuel storage facility" in the Commercial Town Center District (CTC District), within which the property lies. (ROR, Exhibit 26, p. 4-10-11).
In September 1996, Cumberland filed a site plan application proposing to demolish the existing gasoline station on the property and build a new gasoline station on a site consisting of a merger of the property and its abutting property. (ROR, Exhibits 6 p. 5-6; 8). On July 1, 1997, after the site plan application was denied on the ground that a gasoline station was a prohibited use in the CTC District, Cumberland filed a Zoning Compliance and Health Permit Application (the application) with the Westbrook zoning enforcement officer (the ZEO) to reopen the gasoline station on the property. (ROR, Exhibits 6 p. 5-6; 7).
On July 23, 1997, the ZEO denied the application on the following grounds: "1. The use is not a permitted use in the `CTC' zone. 2. The use is not a preexisting non-conforming use. 3. The use was abandoned." (ROR, Exhibit 7). Cumberland appealed to the board from the ZEO's decision and the board held a public hearing on September 24, 1997. (ROR, Exhibit 6). The board denied the application and upheld the decision of the ZEO for all three reasons cited by the ZEO. (ROR, Exhibits 3; 5). Cumberland now appeals to this court, pursuant to General Statutes §8-8 (b), from the board's decision on the grounds that the board's decision is unsupported by the evidence in the record, is contrary to law and is based upon an erroneous interpretation of the Westbrook zoning regulations.
II. Aggrievement
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiffs appeal."Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184, 192, 676 A.2d 831
(1996). Section 8-8 (b) of the General Statutes provides, in pertinent part, that "any person aggrieved by any decision of a [zoning] board may take an appeal to the superior court. . . ." Cumberland is the owner of the property, which was the subject of the application denied by the board. Accordingly, it is aggrieved by the board's decision and has standing to maintain this appeal. See Winchester Woods Associates v.Planning Zoning Commission, 219 Conn. 303, 308, 592 A.2d 953 (1991). CT Page 5876
III. Timeliness
An appeal from a zoning board's decision must "be commenced by service of process . . . within fifteen days from the date that notice of the decision was published. . . ." General Statutes § 8-8 (b). The return of record reveals that the board published notice of its decision on October 4, 1997. (ROR, Exhibit 5). On October 15, 1997, Tanya Lane, Town Clerk for the Town of Westbrook, and John Hall, III, Chairman of the Westbrook Zoning Board of Appeals, were served. Accordingly, the appeal is timely.
IV. Scope of Review
"Where a zoning agency has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. . . ." (Citations omitted; internal quotation marks omitted.) Bloom v. Zoning Board of Appeals, 233 Conn. 198, 208, 658 A.2d 559
(1995). Where a board gives reasons for its decision, which are insufficient to support the decision, the court must search the record to determine whether it contains substantial evidence from which the ultimate finding could be inferred. See Grillo v. Zoning Board ofAppeals, 206 Conn. 362, 369, 537 A.2d 1030 (1988); Connecticut BuildingWrecking Co. v. Carothers, 218 Conn. 580, 601, 590 A.2d 447 (1991). "The `substantial evidence' standard requires enough evidence to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. . . ." (Citation omitted; internal quotation marks omitted.) Kaufman v.Zoning Commission, 232 Conn. 122, 151, 653 A.2d 798 (1995).
The plaintiff has the burden of demonstrating that the board acted improperly. See Bloom v. Zoning Board of Appeals, supra, 233 Conn. 206. The court is limited to determining whether the board's act was "arbitrary, illegal or an abuse of discretion," Id., 205-06.
V. Discussion
A. Use of the property as a gasoline station in the CTC District
In its brief, Cumberland argues that the board's determination that the use of the property as a gasoline station is not permitted in the CTC District, is erroneous. Nonetheless, Cumberland failed to raise this argument in its appeal from the ZEO's decision to the board. (ROR, Exhibit 6). Rather, its appeal to the board was predicated on the grounds that the use of the property was a nonconforming use, which had CT Page 5877 not been abandoned. (ROR, Exhibit 6, p. 3, 23). Cumberland also failed to raise this argument at the hearing on the present matter. Moreover, Cumberland previously litigated this issue in an appeal from the denial of its 1996 site plan application. In the matter of Cumberland Farms,Inc. v. Zoning Commission, Superior Court, judicial district of Middlesex at Middletown, Docket No. 81849 (May 24, 1999, Arena, J.), the court specifically held that the Westbrook zoning regulations prohibited the use of a gasoline station in the CTC District. Accordingly, the court finds that the board's first determination is not erroneous.
B. Abandonment of the use of the property as a gasoline station
Cumberland further argues that the evidence in the record does not support the board's determination that the preexisting nonconforming use of the property as a gasoline station was abandoned. In response, the board argues that the use of the property as a gasoline station does not constitute a preexisting nonconforming use because the Bongiorni estate abandoned the use prior to the effective date of the new regulations, June 21, 1991. Additionally, the board argues that Cumberland abandoned the property after the effective date of the new regulations.
Under General Statutes § 8-2 (a), a zoning authority may not prohibit the continuance of a nonconforming use which existed at the time of the adoption of a new regulation. A nonconforming use is a "use or structure prohibited by the zoning regulations but . . . permitted because of its existence at the time that the regulations [were] adopted."Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 710, 535 A.2d 799
(1988).
Section 8-2 (a) of the General Statutes further provides that a nonconforming use shall not be deemed to have terminated "solely as a result of nonuse for a specific period of time without regard to the intent of the property owner to maintain that use." "Abandonment is a question of fact which implies a voluntary and intentional renunciation. Nevertheless, the intent to abandon may be inferred as a fact from the circumstances. . . . The mere discontinuance of a use where there is no intent to abandon is not enough. . . . To establish abandonment, the intention on the part of the owner [must be] to relinquish permanently
the nonconforming use. . . . Because the conclusion as to the intention of the landowner is an inference of fact, it is not reviewable unless it was one which the trier could not reasonably make. . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.)Cummings v. Tripp, 204 Conn. 67, 93, 527 A.2d 230 (1987).
"[A] use . . . is not discontinued . . . by a mere temporary suspension for a reasonable time, for reasons beyond the owner's control, CT Page 5878 where there exists a manifested intention on the part of the owner to resume the nonconforming use. . . ." (Citations omitted; internal quotation marks omitted.) Magnano v. Zoning Board of Appeals, 188 Conn. 225,228, 449 A.2d 148 (1982). See Cummings v. Tripp, supra, 204 Conn. 94
(where the court held that the nonconforming use of renting cottages was not abandoned, even though the cottages were not rented for two years, because the previous owner of the property died and his estate did not repair or convey the property until two years after his death); Davis v.Zoning Board, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 291298 (January 29, 1993) (where the court held that the defendant did not abandon the nonconforming use of a hotel despite the fact that the property was not used as a hotel for twenty five years due to the defendant's financial hardship).
In its brief, the board relies on the following evidence in support of its contention that the Bongiorni estate intended to abandon the property: (1) the Bongiorni estate "rendered itself incapable of selling any gasoline by removing all underground storage tanks from the property, and took no steps to reopen the gasoline station;" and (2) a letter of Attorney Maura Finan, the successor trustee of the Bongiorni estate, dated September 19, 1997, which states "[a]s trustee, I did not have any intention of reviving the gas station business or installing new fuel storage tanks." (ROR, Exhibit 19, attachment 2).
The board further argues that the following evidence demonstrates that Cumberland intended to abandon the use of the property as a gasoline station: (1) 1991 and 1991 internal Cumberland memoranda, 1995 communications with the ZEO, and 1996 site plan application, proposing to demolish the gasoline station on the property and rebuild a new gasoline station across a merged site consisting of the property and its abutting property. (ROR, Exhibits 11; 14; 19, attachments 4, 5, 7, 9); (2) Cumberland's leasing the property to a welding artist; and (3) Cumberland's failure to renew a license to sell gasoline on the site and failure to reinstall gasoline tanks on the property.
The evidence cited by the board is insufficient to support its determination that the use of the gasoline station on the property was abandoned, nor is its determination supported by substantial evidence in the record. A pertinent consideration as to whether there was an intent to abandon the use of the property as a gasoline station included whether the suspension of the use occurred for reasons beyond the owners' control. The record contains substantial evidence that the use of the property as a gasoline station was suspended for reasons beyond the owners' control. The use of the property as a gasoline station was suspended due to the contamination of the property caused by the defective gasoline storage tanks. The Bongiorni estate did not CT Page 5879 voluntarily relinquish the use of the property as a gasoline station. Rather, the DEP specifically ordered that the gasoline tanks be removed due to the contamination. (ROR, Exhibit 12).
On January 14, 1989, the DEP commenced remediation of the property. (ROR, Exhibit 12). As of November 15, 1993, it incurred expenses in the amount of $348,228.44 and later filed a lien on the property to recoup these expenses. (ROR, Exhibits 12; 13; 16) Moreover, on March 2, 1989, Cumberland brought suit against the Bongiorni estate because the defective gasoline tanks contaminated its abutting property and later obtained an attachment of the property. (ROR, Exhibits 12; 13). The DEP then intervened in the matter to recover its remediation costs. (ROR, Exhibit 12). This matter was not settled until over four years later when the parties filed a stipulated judgment in May of 1994. (ROR, Exhibits 12, 16).
Given the pendency of the litigation and remediation, it was reasonable for Finan to state that she had no intention of reviving the gasoline station during her tenure as trustee of the Bongiorni estate. The fact that she had no intention to reopen the gasoline station during her position as trustee, however, does not warrant a finding that she intended to permanently relinquish the use of the property as a gasoline station. Considering the circumstances, it would not have been economically prudent for the Bongiorni estate to reopen the gasoline station during the period between March of 1989 when the contamination was discovered and May of 1994 when the property was conveyed to Cumberland.
Nor does the record contain substantial evidence to support a finding that Cumberland intended to abandon the use of the property as a gasoline station. Cumberland obtained the property in 1994. (ROR, Exhibits 12; 23). At the public hearing on this matter on September 24, 1997, a Cumberland agent testified that Cumberland filed for bankruptcy in 1992 and underwent a period of reorganization. (ROR, Exhibit 6, p. 18). He noted that, as a result of the bankruptcy, authorization to spend money on the property did not occur until June of 1995. (ROR, Exhibit 6, p. 18, 25-26).
The fact that Cumberland proposed to merge the property and its abutting property and construct a gasoline station over the two properties, does not demonstrate an intent to permanently relinquish the use of the property as a gasoline station. The record reveals that, in a letter to the ZEO, dated September 11, 1996, Cumberland specifically stated that its site plan "application [was] without prejudice to [its] claim . . . that the gas service station facility use on the [property] has not and is not being abandoned." (ROR, Exhibit 8). It is apparent CT Page 5880 that Cumberland would have preferred to use the property as noted in its 1996 site plan application. Nonetheless, the letter dated September 11, 1996, clearly shows a manifest intention not to abandon the use of the property as a gasoline station.
Moreover, Cumberland's leasing the property to a welding artist, does not support an inference that it intended to abandon the use of the property as a gasoline station. At the public hearing on September 24, 1997, a Cumberland agent testified that Cumberland leased the building on the property on a month to month basis in order to mitigate some of the costs and expenses of maintaining the property, including the payment of taxes. (ROR, Exhibit 6, p. 24). Cumberland further clarified that it leased the building "to protect the integrity of the building, during the winter with heat and things of that nature . . . [and] . . . to make sure [that it] was not . . . abused or destroyed." (ROR, Exhibit 6, p. 24).[1]
Lastly, Cumberland's failure to renew a license to sell gasoline and failure to reinstall gasoline tanks on the property does not support a finding that Cumberland intended to permanently relinquish the use of the property as a gasoline station. In December of 1995, the ZEO informally notified Cumberland that the use of the property as a gasoline station was considered abandoned. (ROR, Exhibit 6 p. 21; 19, attachment 7). Thus, in order for Cumberland to obtain a license to sell gasoline and install gasoline tanks on the property, the status of the gasoline station as a nonconforming use had to be formally determined. Therefore, Cumberland followed the correct procedures by first applying to the ZEO and board to determine whether the gasoline station was a valid nonconforming use pursuant to its application.
The record contains substantial evidence that the use of the property as a gasoline station was suspended for reasons beyond the owners' control for a reasonable period of time. Accordingly, the board's finding that the use was abandoned is illegal, arbitrary and an abuse of its discretion.
C. Preexisting use as of the time of the adoption of the new zoning regulations
Lastly, Cumberland argues that the evidence in the record does not support the board's determination that the use of the property as a gasoline station is not a preexisting nonconforming use. In response, the board argues that the use is not a valid nonconforming use because the use of the property as a gasoline station ceased in 1989 and was not in existence as of the time of the adoption of the new regulations prohibiting the use in 1991. CT Page 5881
"For a use to be considered nonconforming . . . that use must possess two characteristics. First, it must be lawful and second, it must be in existence at the time that the zoning regulation making the use nonconforming was enacted. . . ." (Citation omitted; emphasis omitted; internal quotation marks omitted.) Cummings v. Tripp, supra,204 Conn. 91-92. In DeFelice v. Zoning Board of Appeals, 130 Conn. 156, 161,32 A.2d 635 (1943), the court noted, albeit in dicta, that an existing use "need not be in actual operation at all when the regulations took effect. Actual use as distinguished from merely contemplated use is requisite, however." In the present matter, the use of the property as a gasoline station was not merely a contemplated use. The use of the property as a gasoline station had been in actual existence for over forty-five years. (ROR, Exhibit 12). The use was then suspended due to the contamination, remediation and pending litigation.
Although the use of the gasoline station was not an active use as of the time of the amendment of the zoning regulations, the property still maintained the characteristics of a gasoline station. During the time of the litigation and remediation, Matus continued to operate an automobile repair business on the property and renewed his license to sell gasoline at the station until the property was conveyed to Cumberland in 1994. (ROR, Exhibits 6, p. 13, 34). The gasoline station building, the gas pumps and pump island still remain on the property. (ROR, Exhibit 6, p. 2, 21).
"[A] lawfully established nonconforming use is a vested right . . . entitled to constitutional protection. . . ." (Citations omitted; internal quotation marks omitted.) O G Industries, Inc. v. Planning Zoning Commission, 232 Conn. 419, 430, 655 A.2d 1121 (1995). An analysis of the intent of the owner is required in determining whether a nonconforming use has been terminated. See General Statutes § 8-2
(a). A nonconforming use cannot be deemed to have terminated solely as a result of nonuse for a specific period of time. See id. Similarly, an actual preexisting use should not be denied the status of a nonconforming use merely because it was suspended at the time of the adoption of new zoning regulations where the use was not active due to circumstances beyond an owner's control if no intent to abandon is found.[2] In the present matter, there is substantial evidence in the record to support a finding that the use was suspended for a reasonable period of time for reasons beyond the owners' control. Therefore, the board's finding that the gasoline station was not a preexisting nonconforming use is erroneous.
VI. Conclusion
For the reasons herein stated, Cumberland's appeal is sustained. CT Page 5882
It is so ordered.
By the court,
Higgins, J.