[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (#113)
The plaintiff, Christa Pane, filed this five-count complaint against the defendants, the City of Danbury and Emanuel Merullo, City Personnel Director, alleging invasion of privacy and intentional and negligent infliction of emotional distress caused by granting a newspaper reporter unrestricted access to her personnel file. The defendants now move for summary judgment as to all five counts.
The plaintiff alleges the following facts. The city of Danbury hired the plaintiff in 1987 to serve as a public health inspector. In 1995, Merullo granted the request of Elizabeth Hamilton, a known newspaper reporter for the Danbury News-Times, for unrestricted access to the plaintiffs personnel file. The plaintiff was not notified of Hamilton's request. Hamilton subsequently authored two newspaper articles published in the Danbury News-Times highly critical of the plaintiff's job performance. Both articles were based on information contained in the personnel file. The plaintiff claims that, as a result of the defendants' actions, she has suffered public embarrassment, ridicule, humiliation and extreme emotional distress.
"The standard of review for summary judgment is well established. Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the nonexistence of any material fact. . . ." (Internal quotation marks omitted.) Maffucci v. Royal Park Ltd. Partnership, 243 Conn. 552, 554,707 A.2d 15 (1998).
"[A] party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together CT Page 13212 with the evidence disclosing the existence of such an issue . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court. . . ." (Internal quotation marks omitted.) Home Ins. Co. v. Aetna Life Casualty Co., 235 Conn. 185, 202, 663 A.2d 1001 (1995).
 First and Second Counts A. Failure to Exhaust Administrative Remedies
The defendants first argue that summary judgment should be granted as to counts one and two, alleging "invasion of personal privacy" in violation of public policy and the Freedom of Information Act (FOIA), because the court lacks subject matter jurisdiction. The defendants argue that the Freedom of Information Commission has authority to consider complaints alleging "invasion of personal privacy" and to impose penalties pursuant to § 1-206 (b) (1) of the FOIA. The defendants therefore conclude that the plaintiff must appeal to the Commission and exhaust her administrative remedies before appealing to the court.
The plaintiff responds that summary judgment should not be granted because an appeal to the Commission would be futile. She argues that § 1-206 (b) (1) of the FOIA provides a right of appeal to the Commission that is normally exercised prior to disclosure of information. She accordingly argues that, because the defendants have already disclosed the contents of her personnel file, she has no administrative remedy and an appeal to the court is timely.
Ordinarily, "[a]ny defendant, wishing to contest the court's jurisdiction . . . must do so by filing a motion to dismiss. . . ." Practice Book § 10-30. However, "once the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case. . . ." (Internal quotation marks omitted.) Golden Hill Paugussett Tribe of Indians v. Southbury,231 Conn. 563, 570, 651 A.2d 1246 (1995).
"It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter." (Internal quotation marks omitted.) OG Industries, Inc. v. Planning ZoningCommission, 232 Conn. 419, 425, 655 A.2d 1121 (1995). "The doctrine of exhaustion furthers the salutary goals of relieving the courts of the CT Page 13213 burden of deciding questions entrusted to an agency . . . in advance of possible judicial review." (Internal quotation marks omitted.) Johnson v.Dept. of Public Health, 48 Conn. App. 102, 111, 710 A.2d 176 (1998). However, the court has "grudgingly carved several exceptions from the exhaustion doctrine. . . . One of the limited exceptions to the exhaustion rule arises when recourse to the administrative remedy would be demonstrably futile or inadequate." (Internal quotation marks omitted; citations omitted.) Mendillo v. Board of Education, 246 Conn. 456,467, 717 A.2d 1177 (1998). "It is futile to seek a remedy . . . when such action could not result in a favorable decision and invariably would result in further judicial proceedings." OG Industries, Inc. v.Planning Zoning Commission, supra, 232 Conn. 429.
Section 1-206 (b) (1) of the FOIA provides, in pertinent part: "Any person denied . . . any . . . right conferred by the Freedom of Information Act may appeal therefrom to the Freedom of Information Commission, by filing a notice of appeal with said commission." Section 1-206 (d) further provides: "Any party aggrieved by the decision of said commission may appeal therefrom, in accordance with the provisions of section 4-183." Under § 4-183 of the Administrative Procedure Act, "[a] person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court. . . ."
The defendants granted Hamilton unrestricted access to the plaintiffs personnel file before she had an opportunity to appeal pursuant to §1-206 (d) of the FOIA. Therefore, an appeal to the Commission at this point in time would be futile. See OG Industries, Inc. v. Planning Zoning Commission, supra, 232 Conn. 429. Accordingly, the court has subject matter jurisdiction and denies the defendant's motion for summary judgment on that ground.
 B. Private Cause of Action for Civil Damages
The defendants next move for summary judgment as to counts one and two on the ground that the FOIA does not provide for a private cause of action for civil damages. They argue that the plaintiff must pursue these claims under other causes of action. The plaintiff replies that the court should deny the defendants' motion because the FOIA provides for a private cause of action for civil damages under the "invasion of personal privacy exemption."
The FOIA contains no provisions that expressly permit a private cause of action for civil damages. See §§ 1-200 et seq. Section 1-206 (b) (2) of the FOIA provides that the commission may impose a civil penalty of CT Page 13214 "not less than twenty dollars nor more than one thousand dollars" against any official who denies, without reasonable grounds, a right conferred upon an individual by the FOIA. However, the penalty is a fine on the offending official, not compensation to the party whose right was denied. See General Statutes § 1-206 (b) (2). Accordingly, the plaintiff may not bring a claim under the FOIA for civil damages.
The plaintiff argues that the court recognized a private cause of action for civil damages under the FOIA in Perkins v. Freedom ofInformation Commission, 228 Conn. 158, 635 A.2d 783 (1993). The plaintiff relies on the court's statement that "the tort action provides a private remedy to implement a public policy that closely approximates the public policy embodied in Section [1-210 (b)] of the FOIA." Id., 172. However, in that case the court was discussing the standard and burden of proof a plaintiff must meet in order to claim an "invasion of personal privacy" exemption. Id., 175-76. After exploring "developing notions of personal privacy" from an historical perspective, the court deemed it "appropriate to construe the phrase, invasion of personal privacy,' according to its common law meaning." Id., 170. The court did not conclude that a plaintiff could bring a cause of action for civil damages under the exemption, but rather, that the criteria used to determine what constitutes an "invasion of personal privacy" should be similar in both a common law tort action, which provides a private remedy for invasion of privacy, and an action under the FOIA claiming the statutory exemption.
Accordingly, the Motion for Summary Judgment as to the First and Second Counts is granted.
 C. Constitutional Claims 1. State Constitutional Claim
The defendants argue that summary judgment should be granted insofar as count three alleges a private cause of action under the Connecticut constitution because the constitution does not specifically protect the right to personal privacy.
The plaintiff responds that a right to privacy under the Connecticut constitution arises from the penumbras of specific guarantees in article first, § 7. "Security from searches and seizures."
"[A]ll rights derived by statute and the common law at the time of the adoption of article first, § 10, [of the Connecticut constitution of 1818] are incorporated in that provision by virtue of being established by law as rights the breach of which precipitates a recognized CT Page 13215 injury. . . ." (Internal quotation marks omitted.) Falco v. Instituteof Living, 50 Conn. App. 654, 661, 718 A.2d 1009
(1998). "These rights are referred to as `constitutionally incorporated common-law right[s].'" Id. "[A]lmost all states recognize the right to privacy in the context of the tort of invasion of privacy." Perkins v. Freedom of Information Commission, supra, 228 Conn. 170 n. 14. However, "[t]he tort of invasion of privacy was first recognized in Connecticut in 1959." Id., 172 n. 16. Therefore, because it was recognized after the Connecticut constitution was adopted, "the tort of invasion of privacy is not a constitutionally incorporated common-law right." Falco v. Institute of Living, supra,50 Conn. App. 661. Moreover, Connecticut courts have rejected requests to recognize causes of action under the state constitution which did not exist when the constitution was adopted in 1818. See Kelley PropertyDevelopment, Inc. v. Town of Lebanon, 226 Conn. 314, 627 A.2d 909
(1993). Accordingly, the defendants' motion for summary judgment as to allegations that the defendant violated the plaintiffs "right to personal privacy" under the Connecticut constitution is granted.
 2. Federal Constitutional Claim a. Grounds for Claim
The defendants argue that summary judgment should be granted as to count three, alleging "invasion of personal privacy" under the federal constitution, because no grounds exist to bring such a claim. The defendants argue that, under the FOIA, the records of any public agency are considered public documents and are open to public inspection unless exempt pursuant to § 1-210 (b). They argue that information in the plaintiffs personnel file was related to her job performance, including records of her tardiness and her use of a city vehicle for personal business. They argue that such information is a legitimate matter of public concern and would not be highly offensive to a reasonable person. The defendants therefore conclude that the plaintiff has no grounds under the federal constitution for an invasion of privacy claim.
The plaintiff responds that the defendants' motion should not be granted because there are more than sufficient grounds for bringing a claim. She argues that her personnel file contained unsubstantiated and baseless allegations of "irregularities" in her job performance that were never acted upon by the defendants. She further argues that the allegations were not a legitimate matter of public concern and would be highly offensive to a reasonable person. The plaintiff accordingly argues that her claim must survive the defendants' motion. CT Page 13216
The United States Supreme Court established in Griswold v.Connecticut, 381 U.S. 479, 485, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), that specific guarantees in the Bill of Rights create "zones of privacy" applicable to the states through the fourteenth amendment.
Under U.S.C. § 1983, "[a]ny person who, under color of any law, statute, ordinance, regulation, custom, or usage of any State, shall subject, or cause to be subjected, any person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States, shall, any such law, statute, ordinance, regulation, custom, or usage of the State to the contrary notwithstanding, be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress. . . ." (Emphasis in original; internal quotation marks omitted.) Monell v. New York City Dept. of SocialServices, 436 U.S. 658, 691-92, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).
Section 1-210 (a) of the FOIA provides: "Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency . . . shall be public records and every person shall have the right to inspect such records promptly during regular office or business hours or to receive a copy of such records in accordance with the provisions of section 1-210," subject to the exemptions in § 1-210 (b). When the exemption claimed is for "invasion of personal privacy," the plaintiff has the burden of showing that "the information sought by a request does not pertain to legitimate matters of public concern and is highly offensive to a reasonable person." Perkins v. Freedom of Information Commission, supra, 228 Conn. 175.
In the present case, the plaintiff has grounds to bring a claim pursuant to § 1983, since there is a genuine issue as to whether Merullo's actions deprived the plaintiff of her constitutionally protected right to privacy. The parties do not agree that all of the information contained in the plaintiffs employment file was a legitimate matter of public concern. Nor do they agree that disclosing the information would not be highly offensive to a reasonable person. In reaching their differing conclusions, the defendants rely on records of the plaintiffs tardiness and her unauthorized use of a city vehicle, while the plaintiff relies on records containing allegations of wrongful conduct that were never acted upon by her superiors. Accordingly, this issue should be decided by the trier of fact and the Motion for Summary Judgment as to the Federal constitutional claim is denied.
 b. Federal Qualified Immunity
The defendants request summary judgment as to Merullo's liability under CT Page 13217 § 1983 on the ground that he is protected by federal qualified immunity. The defendants argue that Merullo followed established procedures by contacting the city attorney to determine the appropriate method for reviewing the plaintiffs personnel file. They argue that Merullo subsequently reviewed the file with care, and that he reasonably believed at the time he granted Hamilton's request that his decision was lawful.
The plaintiff argues that there is a genuine issue of fact as to whether it was objectively reasonable for Merullo to believe that his actions were lawful. The plaintiff argues that Merullo should have been especially guarded in protecting her privacy in light of Hamilton's request for unrestricted access to her personnel file. She argues that Merullo was not limited to granting or refusing Hamilton's request. She argues that his only reasonable choice was to give her notice of Hamilton's request pursuant to § 1-210 (b) of the FOIA so that she could appeal to the Commission to prevent the file's release.
"The federal courts have long recognized the necessity of protecting government officials from liability in the performance of their discretionary duties." Schnabel v. Tyler, 230 Conn. 735, 744, 646 A.2d 152
(1994). Therefore, "[q]ualified immunity may serve as a defense to civil suits brought pursuant to § 1983. . . ." Id., 742. "[F]ederal qualified immunity shields a public official performing discretionary acts from liability if the law was not clearly established at the time of the performance of his or her conduct, or, in the case of clearly established law, if it was objectively reasonable for the public official to believe that his or her acts were lawful in light of the clearly established law." Id., 747.
The parties dispute the factual issue of whether it was objectively reasonable for Merullo to believe that granting Hamilton unrestricted access. This issue is properly left to the trier of fact, and the defendants' motion for summary judgment as to Merullo's liability for invasion of privacy pursuant to § 1983 is denied.
 c. Danbury's Liability
The defendants also argue that Danbury may not be held liable pursuant to § 1983 because it is city practice to examine requested personnel files for personal privacy information and to withhold such information if any exists. The plaintiff replies that Merullo acted in the capacity of a city officer in releasing the file, thus bringing the claim against Danbury securely within the purview of § 1983. CT Page 13218
"Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. New York City Dept. ofSocial Services, supra, 436 U.S. 690. "[L]ocal governments . . . may [also] be sued for constitutional deprivations visited pursuant to governmental `custom' even though such a custom has not received formal approval through the body's official decision making channels." Id. 690-91. "Congress included customs and usages [in § 1983] because of the persistent and widespread discriminatory practices of state officials. . . . Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a "custom or usage" with the force of law." (Internal quotation marks omitted.) Id. 691. "[M]unicipal liability under Section 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. Cincinnati, 475 U.S. 469, 483,106 S.Ct. 1292, 89 L.Ed. 2 452 (1986).
Here, Danbury may not be held liable under color of state law because Merullo's decision to release the plaintiffs personnel file did not represent a final governmental policy, or even a governmental "custom," with respect to individual privacy rights. Neither party alleges that Danbury has an officially-adopted policy as to how to construe the personal privacy exemption under the FOIA, or that Merullo is responsible for establishing final municipal policy with respect to the exemption. To the extent that Merullo's consultation with the city attorney might be considered a governmental "custom," his occasional, informal requests for legal advice regarding the procedural guidelines he should follow in construing the personal privacy exemption does not rise to the level of the widespread and persistent practice envisioned in Monell. See Monellv. New York City Dept. of Social Services, supra, 436 U.S. 691. Furthermore, Merullo's stated purpose in consulting with the city attorney was not to deprive the plaintiff of her privacy rights, but to prevent the release of personal information to the public while still complying with the spirit and substance of the FOIA to disclose public records. Accordingly, the court grants the defendants' motion for summary judgment as to the plaintiffs claim against Danbury pursuant to § 1983.
 D. Intentional Infliction of Emotional Distress
The defendants next move for summary judgment as to count four of the CT Page 13219 plaintiffs complaint, alleging intentional infliction of emotional distress, on the ground that there is no genuine issue regarding Merullo's intention to comply with the law in releasing the plaintiffs personnel file. The defendants argue that Merullo's conduct was not extreme or outrageous, that he never intended to harm the plaintiff and that his actions could not reasonably have caused the plaintiffs alleged distress. They also argue that the plaintiffs distress could not have been severe because she did not seek medical treatment.
The plaintiff replies that factual disputes remain as to Merullo's conduct. She argues that Merullo's failure to notify her of Hamilton's request was extreme and outrageous. She argues that her personnel file contained unsubstantiated and baseless allegations of wrongdoing, and that she had no opportunity to submit contradictory information explaining her position. She argues that the defendants knew, or should have known, that she would suffer severe emotional distress if they granted a newspaper reporter unrestricted access to her personnel file. She argues that her sleepless nights, worry, humiliation, the damage to her professional reputation, her diminished opportunity for professional advancement and the unwillingness of several colleagues to speak with her at work following publication of the newspaper articles are evidence that the defendants' caused her severe emotional distress.
"[I]n order to state a claim of intentional infliction of emotional distress, [i]t must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiffs distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) Parsonsv. United Technologies Corp., 243 Conn. 66, 101, 700 A.2d 655 (1997).
Section 1-214 (b) of the FOIA provides: "Whenever a public agency receives a request to inspect or copy records contained in any of its employees' personnel . . . files and the agency reasonably believes that the disclosure of such records would legally constitute an invasion of privacy, the agency shall immediately notify in writing (1) each employee concerned . . . Nothing herein shall require an agency to withhold from disclosure the contents of personnel . . . files when it does not reasonably believe that such disclosure would legally constitute an invasion of personal privacy."
"Whether the defendant's conduct . . . [is] sufficient to satisfy [the element of extreme and outrageous conduct] is a question, in the first instance, for [the] court. Only where reasonable minds can differ does it CT Page 13220 become an issue for the jury." Mellaly v. Eastman Kodak Co.,42 Conn. Sup. 17, 18, 597 A.2d 846 (1991). In determining whether conduct is extreme and outrageous," [t]he rule which seems to have emerged is that there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." (Emphasis in original; internal quotation marks omitted.) Petyan v.Ellis, 200 Conn. 243, 254 n. 5, 510 A.2d 1337 (1986). "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." Mellaly v.Eastman Kodak Co., supra, 42 Conn. Sup. 19. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to . . . be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" (Internal quotation marks omitted.) Id., 20.
In the present case, the court finds that the defendants did not engage in extreme and outrageous conduct. The plaintiff alleges that the defendants should have notified her of Hamilton's request so that she could object pursuant to § 1-206 (b) (1) of the FOIA. However, the plaintiff does not deny that the information disclosed was related to her job performance. Moreover, § 51-214 (b) of the FOIA leaves it to the discretion of a public agency to determine whether it "reasonably believes" disclosure of information legally constitutes "invasion of personnel privacy." In exercising his discretion to release the file, Merullo did not engage in conduct "exceeding all bounds usually tolerated by a decent society," but merely followed the statutory requirements. Accordingly, the court grants the defendants' motion for summary judgment as to the 4th Count.
 E. Negligent Infliction of Emotional Distress 1. The City of Danbury
The defendants next argue that summary judgment should be granted as to count five, insofar as it alleges negligent infliction of emotional distress against Danbury, because a municipality may not be sued directly for common law negligence.[1]
"[A] municipality enjoys governmental immunity for common-law negligence unless a statute has limited or abrogated that immunity. . . ."Williams v. New Haven, 243 Conn. 763, 769, 707 A.2d 1251 (1998). In CT Page 13221 the present case, the FOIA contains no provisions limiting or abrogating governmental immunity for common-law negligence. Accordingly, the court grants the defendants' motion for summary judgment as to the allegations against Danbury in count five.
 2. Merullo
The defendants move for summary judgment as to Merullo's liability for negligent infliction of emotional distress on the ground that he is protected by governmental immunity. They argue that his public duty as a city official was to comply with the provisions of the FOIA, and that he fulfilled this duty by granting Hamilton's request to inspect the plaintiffs personnel file. They further argue that his decision was discretionary and that, even if he made an error in judgment, a public official cannot be held liable for making a mistake when performing a discretionary act.
The plaintiff argues that Merullo is not protected by governmental immunity because his duty to the plaintiff was not a duty to the public, but a duty to the individual.
"Whether a public or private duty is established, there is no potential liability if the act complained of is a discretionary act that does not fit into any of the narrow exceptions outlined in Shore." Gordon v.Bridgeport Housing Authority, supra, 208 Conn. 169. A discretionary act involves "the exercise of discretion"; Shore v. Stonington, 187 Conn. 147,153, 444 A.2d 1379 (1982); as opposed to a ministerial act, which is performed "in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action." (Internal quotation marks omitted.) Gordon v. Bridgeport Housing Authority, supra, 208 Conn. 167-68. In the present case, Merullo's review of the plaintiffs personnel file was discretionary because it involved the exercise of judgment as to whether or not the file contained information that should not be disclosed.
The plaintiff argues that Merullo does not have governmental immunity because his conduct falls within the exception that permits an action in tort if a public official's failure to act is likely to result in "imminent harm" to an identifiable person. She argues that the exception applies because Merullo should have known that disclosing the entire contents of her personnel file would be likely to cause her imminent harm.
The governmental immunity normally granted to municipal employees who perform discretionary acts is subject to three exceptions: "first, where CT Page 13222 the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." (Internal quotation marks omitted.) Pruzycki v. Fairfield, 244 Conn. 101,108, 708 A.2d 937 (1998). Cases where plaintiffs allege "imminent harm" typically involve physical harm rather than emotional distress. SeeElliott v. City of Waterbury, 245 Conn. 385, 715 A.2d 27 (1998) (decedent killed by hunter while on city-owned property); Purzycki v. Fairfield,244 Conn. 101, 708 21 A.2d 937 (1998) (student injured in unsupervised school hallway); Fraser v. United States, 236 Conn. 625, 674 A.2d 811
(1996) (decedent stabbed at federal medical center); Burns v. Board ofEducation, 228 Conn. 640, 638 A.2d 1 (1994) (student injured by fall in school courtyard); Evon v. Andrews, 211 Conn. 501, 559 A.2d 1131 (1989);Gordon v. Bridgeport Housing Authority, supra, 208 Conn. 161 (decedent attacked at city housing authority project); Shore v. Stonington,187 Conn. 147, 444 A.2d 1379 (1982) (decedent killed by vehicle driven by intoxicated driver). Here, Merullo's failure to notify the plaintiff of Hamilton's request did not result in physical harm. Accordingly, Merullo, is protected by governmental immunity from the plaintiffs common law claim for negligent infliction of emotional distress, and the court therefore grants the defendants' motion for summary judgment.
Based on the foregoing, the court grants the defendants' motion for summary judgment as to Counts One, Two, Four and Five in their entirety. The court grants the defendants' Motion for Summary Judgment as to the state constitutional claim against both defendants and the Federal constitutional claim against Danbury in Count Three. The court denies the defendants' motion for summary judgment as to the court's lack of subject matter jurisdiction over the civil claims in counts one and two and the federal constitutional claim against Merullo in count three.
RUSH, J.